Lori A. Zirkle (SBN 015365)
Charles M. Seby (SBN 035523)
**BOWMAN AND BROOKE LLP**
Suite 1600, Phoenix Plaza
2901 North Central Avenue
Phoenix, Arizona 85012-2761
Telephone: (602) 643-2300
Lori.Zirkle@bowmanandbrooke.com
Charles.Seby@bowmanandbrooke.com

Tori S. Levine (*Admitted Pro Hac Vice*)
**BOWMAN AND BROOKE LLP**
5830 Granite Parkway, Suite 1000
Plano, Texas 75024
Telephone: (972) 616-1700
tori.levine@bowmanandbrooke.com

Attorneys for Defendant Oueis Gas, Inc.

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christopher Walsh,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>LG Chem America, a Delaware corporation;<br>Oueis Gas, Inc. a New Mexico corporation;<br>LG Chem, Ltd., a South Korea corporation,<br><br>　　　　　　Defendants. | Case No. 2:18-CV-01545-SPL<br><br>**DEFENDANT OUEIS GAS, INC.'S MOTION TO EXCLUDE THE TESTIMONY AND OPINIONS OF CHESTER SANDBERG PURSUANT TO FEDERAL RULE OF EVIDENCE 702** |

Defendant Oueis Gas, Inc., dba Oasis Vape ("Oasis Vape") respectfully requests that the Court exclude the testimony and opinions of plaintiff's expert, Chester "Chet" Sandberg. Sandberg's opinions are not admissible under Federal Rule of Evidence 702 because they are not reliable—specifically, they are not based on sufficient facts and evidence or a reliable methodology applied to the facts of this case.

## INTRODUCTION

This is a products liability case involving two purportedly LG brand lithium ion batteries (the "Subject Batteries") that plaintiff Christopher Walsh claims he bought from retailer Oasis Vape. Walsh was injured when the Subject Batteries, which he was carrying

loose in his right front pants pocket along with keys and a cell phone, caught fire while he was dining with family and friends in a restaurant. He has sued retailer Oasis Vape alleging defective design and failure to warn.

Despite contemplating a lawsuit—and engaging his former counsel—while still in the hospital, Walsh failed to preserve critical evidence in this case—including the Subject Batteries and the companion batteries (alleged Sony brand) that he says were in a Sigelei Mod vaping device in his left front pocket when the incident occurred. He now attempts to rely on the conjecture of his expert, Chet Sandberg, to substitute for the physical evidence that was destroyed. Sandberg's opinions, however, are not reliable. His own testimony proves the point. When asked if he had any evidence to back up his theory that Walsh's keys contacted the loose batteries and caused an external short leading to thermal runaway, he admitted: "I don't—you're right, ***I don't have any evidence, because I don't have the battery***." (Ex. A, Deposition of Chester Sandberg (March 26, 2021) ("Sandberg Dep.") at 69:15–19 (emphasis added).) "Any hypothesis that is incapable of being tested either physically or analytically, is an invalid hypothesis. A hypothesis developed based on the absence of data is an example of a hypothesis that is incapable of being tested." *Philadelphia Indem. v. BMW of N. Am.*, No. CV-13-01228, 2015 WL 5693525 *7 (D. Ariz. Sep. 29, 2015) (*quoting* NFPA 921 § 4.3.6.1).

## **STATEMENT OF FACTS**

On November 18, 2016, plaintiff Christopher Walsh was dining at a restaurant with family and friends when two loose lithium ion batteries, carried in the front right pocket of his pants along with a cell phone and keys, exploded, causing burns that required him to be hospitalized for two weeks. (Second Amended Complaint, ECF 30, ¶¶ 9–10.) According to Walsh, the batteries in his right pocket were LG 18650 H2 batteries, which he was using as backup batteries for a vaping device; he also claims that he carried four keys on a key ring and his Galaxy 5S cell phone in this pocket. Walsh has testified that he kept his vaping

device—a Sigelei Mod[1] with batteries in it—in his left front pocket. (Ex. B, Deposition of Christopher Walsh (June 2, 2020) ("Walsh Dep.") at 98:8–25.)  Walsh's mother obtained restaurant surveillance video that captured the incident and its immediate aftermath, including one of his dining companions collecting items that landed on the floor and placing them in a handbag. (*Id.* at 86:14–25, 87:2–8, 88:7–14.)

Walsh already had a lawyer while hospitalized, and his mother was then pressing him to pursue litigation.  (*Id.* at 87:2–8, 88:7–9.)  Walsh and his then-lawyer, however, did not secure any physical evidence from the incident.  (*Id.* at 88:7–14.)  Walsh testified he did not know why or what happened to the Subject Batteries and other physical evidence.  (*Id.* at 88:13–17.)  His then-girlfriend, Lindsay Niziolek, who was at the restaurant at the time of the incident, testified that the Subject Batteries were still in Walsh's pocket at the hospital and that she put them in a garbage bag with "everything" and the nurses took it away. (Ex. C, Deposition of Lindsay Niziolek (March 11, 2021) ("L. Niziolek Dep.") at 32:7–25.)  And four or five months after the incident, Walsh claims, "I went out and saw some somebody had put a—and I don't really recall who, I guess I could ask again, but somebody left the device and some of my other possessions in a bag on my back patio, and there was nothing inside." (Ex. B, Walsh Dep. at 69:19–25.)

Walsh sued Oasis Vape, where he had, in the past, purchased batteries for his mod as well as vape juice to use in it. He contends that he purchased the now-discarded batteries at Oasis Vape (though he admits that he had purchased mod batteries from other sources too), and that they are defective with respect to design and warnings. (*Id.* at 39:22–42:22; 44:5–17.)  He produced a receipt for a battery purchase at Oasis Vape dated over twelve months before the incident.

In support of his allegations against Oasis Vape, Walsh has retained Chet Sandberg, who describes himself as a battery expert, to offer design and warnings opinions in this case. Sandberg assumes that the Subject Batteries were the LG brand batteries on Walsh's over

---

[1] A "mod" or "vape mod" are electronic nicotine delivery systems that rely on battery power to heat nicotine-containing liquid (often called "e-juice" or "vape juice"), producing a vapor for the user to inhale.

24592644v3

year-old receipt from Oasis Vape. Sandberg admits, however, that he has never examined any vaping product in existence or done "any research on how the life of an 18650 battery typically is for the average vapor and then a heavy vapor." (Ex. A, Sandberg Dep. at 104:3–105:16.) He offers no opinion or basis for refuting the testimony of Oasis Vape's expert, Richard Marzola, that it is unlikely an lithium-ion battery regularly used for vaping would still hold a charge after more than a year. (Ex. D, Deposition of Richard Marzola (June 15, 2021) ("Marzola Dep.") at 13:11–14:5; 26:6–8; 35:13–37:18.) Sandberg primarily opines on the putative cause of the incident, and from this premise, offers defect opinions. According to Sandberg, "[u]nprotected terminals of the [LG] 18650 [H2] battery were shorted when Mr. Walsh placed the [battery] in his pocket with his keys." (Ex. E, Report of Chester Sandberg, P.E. (Feb. 27, 2020) ("Sandberg Rep.") at 1.) Specifically, he believes that Walsh's key simultaneously connected with the positive terminal on the top of the battery and the negative terminal on the bottom, leading to thermal runaway and an explosion. (Ex. A, Sandberg Dep. at 68:11–21.)

Sandberg agrees that there are numerous potential reasons that a lithium-ion battery could explode, including, for example, mechanical impact to the battery or that the wrapper of the battery was damaged. (*Id.* at 67:15–69:22.) Nevertheless, he insists that here, "[t]he keys clearly shorted it out." (*Id.* at 69:14.) When pressed for evidence supporting this opinion, however, he responded, "I don't—you're right, ***I don't have any evidence, because I don't have the battery***. I don't have any evidence of it not happening. And it's the most likely cause . . . they say it can happen." (*Id.* at 69:18–22 (emphasis added).) He also testified that while he may have seen the keychain and keys that were in Walsh's pocket, he didn't examine the keys to determine whether they displayed evidence of arcing. (*Id.* at 11:20–12:15.) Moreover, the keys were discarded before Oasis Vape had an opportunity to inspect them. (Ex. B, Walsh Dep. at 70:21–71:10.)

Sandberg goes on to offer design defect and failure to warn opinions premised entirely on his assumption about the cause of the thermal runaway in this case. Relying on his conclusion that it would be possible for an undamaged battery to externally short circuit

4

and explode in a pocket, Sandberg has concluded that lithium ion batteries are defective in design. (Ex. A, Sandberg Dep. at 67:15–68:1.) He asserts that the batteries either should have been designed with removable insulating brackets—that is, components that would prevent the battery from being used until the brackets were removed—or that owners be provided a silicone jacket for loose batteries or additional warnings. (*Id.* at 112:14–113:2.) But he identifies no lithium ion 18650 batteries on the market with such brackets, acknowledging that by design, batteries are "going to be put in a device that has electrical insulation for the negative and the positive terminals." (*Id.* at 81:21–25.) He likewise admitted that he "would not be surprised" if he learned that users did not use silicone battery cases when they were provided for free. (*Id.* at 84:24–85:5.)

Sandberg also offers internally inconsistent opinions with respect to warnings. He does not know what warnings came from the LG 18650 H2's manufacturer in 2015. He only knows that Walsh's October 2015 receipt from Oasis Vape did not contain warnings.[2] (*Id.* at 33:23–34:3.)

At his deposition, Sandberg testified that Oasis Vape's warnings were defective because if "they had been adequate . . . [Walsh] wouldn't have put it in his pocket." (*Id.* at 31:1–6.) He later admitted, however, that Walsh "probably wouldn't have" heeded warnings not to "carry loose batteries in [his] pocket with metal objects," because "[h]e said he didn't read [warnings]." (*Id.* at 83:14–84:2.)

## MEMORANDUM OF POINTS AND AUTHORITIES

**I. Rule 702 and *Daubert* require courts to evaluate an expert's proposed opinions for reliability.**

A "trial judge must ensure that any and all scientific evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm.*, 509 U.S. 570, 589 (1993). Federal Rule of Evidence 702 requires that a witness offering such evidence be "qualified as an expert

---

[2] Within two months after this purchase, Oasis Vape began printing on store receipts a warning against carrying loose batteries in pockets and provided warning cards at the checkout register and other warning materials in the store. (Ex. A, Sandberg Dep. at 57:4–59:11.) Walsh made purchases at Oasis Vape at least fifteen times between October 2015 and the incident. (Ex. 3 to Walsh Dep., excerpts attached as Ex. F.)

5

by knowledge, skill, experience, training, or education," and permits the testimony only if: "(1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case." To ensure that expert testimony is reliable, the party offering testimony has the burden of establishing that the expert's opinions are "'based on sound science, and this will require some objective, independent validation of the expert's methodology.'" *In re Apollo Group, Inc. Securities Litig.*, 527 F. Supp. 2d 957, 960 (D. Ariz. 2007) (quoting *Daubert v. Merell Dow Pharm.*, 43 F.3d 1311, 1316 (9th Cir. 1995) (*Daubert II*)). Courts may not rely on an expert's self-serving assurances of reliability and validity. *Daubert II*, 43 F.3d at 1316.

## II. There are well-established standards for investigating the cause of an incident like the one at issue.

In the context of fire and explosions, federal courts have recognized the standards set forth in the National Fire Protection Association's *Guide for Fire and Explosions Investigations* ("NFPA 921") as describing a reliable methodology for determining the likely cause of an explosion. *See Schlesinger v. United States*, 898 F. Supp. 2d 489, 504 (E.D.N.Y. 2012) (collecting cases); *see also Fireman's Fund v. Canon United States*, 394 F.3d 1054, 1058 (8th Cir. 2005) (excluding expert whose methodology deviated from NFPA 921); *Allstate Ins. Co. v. Ford Motor Co.*, 2010 WL 1654145 *7 (D. Ariz. 2010) (excluding expert whose opinions did not meet standards of NFPA 921). NFPA 921 provides detailed guidance for every aspect of fire and explosion investigation. The hallmark of fire investigation under NFPA 921 is testing and ruling out causation hypotheses. NFPA 921 (2021) §§ 19.6 and 19.7. The goal is to "disprove, rather than to confirm, [a] hypothesis." NFPA 921 (2021) § 19.6.4. Critical here, investigators "are directed that 'no specific hypothesis can be reasonably formed' **until all relevant evidence is collected and all hypotheses must be based on data that is 'capable of being verified**.'" *U.S. v. Hebshie*, 754 F. Supp. 2d 89, 109 n. 39 (D. Mass. 2010) (quoting NFPA 921 §§ 2.3.1–2.3.7 (2001) (emphasis added)). Oasis Vape's expert, Richard Marzola, confirms that the first step necessary to conduct a reliable investigation of an incident like the one at issue is collecting the physical data for examination and testing. (Ex. D, Marzola

24592644v3

1  Dep. at 30:3–4 ("That's the biggest and most important part here, is the collection of the
2  data.").)

3  Neither Sandberg's defect and causation opinions nor his warnings opinions satisfy
4  Federal Rule of Evidence 702. He does not have sufficient facts or data to form a reliable
5  opinion as to either topic, and does not employ a reliable methodology to reach his opinions.
6  Therefore, his testimony and opinions must be excluded.

7  **III.  Chet Sandberg's defect and causation opinions are inadmissible.**

8  Sandberg's design defect and failure to warn opinions depend on his unsupported
9  assumptions about the cause of the incident. Because he has not—and cannot—gathered and
10 analyzed the evidence necessary to apply a reliable methodology to reach reliable
11 conclusions, his opinions amount to little more than inadmissible *ipse dixit* pronouncements.

12 **A.  Chet Sandberg's design defect opinions are legal conclusions that will not assist the jury.**
13

14 As a threshold matter, Rule 702 permits opinion testimony only if it will assist the
15 jury. Sandberg intends to tell the jury that LG 18650 H2 batteries are defective as designed.
16 This is an improper legal conclusion. *See* Rule 704, cmt. (clarifying that although expert
17 opinions may embody ultimate conclusions, they may not "merely tell the jury what results
18 to reach"). And in any event, Sandberg has not done the work to render his opinion on this
19 topic "helpful" to a jury.

20 Under Arizona law, there are two tests for design defect: risk/benefit and consumer
21 expectation. *Dart v. Wieber Mfg.*, 147 Ariz. 242, 244–45 (1985). As outlined below,
22 Sandberg has done no analysis of the risks and benefits of this battery, foreclosing him from
23 offering a conclusion based on this test. And he has done no work to draw conclusions about
24 what an average consumer might expect—no studies, surveys, or human factors analysis—
25 instead, he speculates.

26 . . .
27 . . .
28 . . .

**B.  Chet Sandberg bases his design defect opinions on an inadmissible causation theory for which he lacks sufficient facts or data.**

The relevant physical evidence in this case is gone. Neither Sandberg nor anyone else has had an opportunity to inspect the Subject Batteries. And though Sandberg was offered the opportunity to view the keychain and keys (which were discarded before Oasis Vape had the opportunity inspect them) that may have been in Walsh's pocket, he did nothing to examine them to determine whether they bore any evidence relating to the battery explosion. Still he has opined that batteries that he has never seen contacted keys in a way that caused the battery to short circuit, causing the thermal event at issue. And, because he has concluded that it was theoretically possible for this to happen, Sandberg intends to opine that it *did* happen here and that the possibility of this happening renders LG 18650 H2 batteries defective and unreasonably dangerous.

Setting aside Sandberg's primary dubious assumption that the batteries in Walsh's pocket were undamaged LG 18650 H2 batteries,[3] he simply has no facts or data to support either his causation opinion or his defect opinion.  As Sandberg admitted at his deposition, he has no evidence to show that this explosion occurred because Walsh's keys contacted a battery and caused it to short:  "I don't—you're right, I don't have any evidence, because I don't have the battery. I don't have any evidence of it not happening. And it's the most likely cause . . . they say it can happen." (Ex. A, Sandberg Dep. at 69:18–22.)

Critically, Sandberg discounts entirely the reason Walsh used these batteries and carried them in his pocket.  He has testified that he did not think Walsh's mod was relevant to this case. (*Id.* at 6:1–10.)  When asked if the batteries had ever been in the mod, he said, "I don't know." (*Id.* at 6:13–18.) However, the use of the product he claims is defective is pivotal to Walsh's claims and Sandberg's opinions in this case. (*See* Ex. D, Marzola Dep. at

---

[3] As already noted, Marzola's testimony, undisputed by Sandberg, reflects that lithium ion batteries likely would not last for more than 12 months when regularly used for vaping. (Ex. D, Marzola Dep. at 13:11–14:5; 35:13–37:18.)  Sandberg, however, not only takes Walsh's implausible testimony on this issue at face value without doing any analysis to test it, he also assumes that the Subject Batteries were undamaged, even though Walsh testified he does not recall their condition.

24592644v3

13:11–14:5; 35:13–37:18.) For example, though Sandberg assumes the batteries in Walsh's pocket were the same ones Walsh purchased over a year earlier from Oasis Vape, he ignores that this assumption could be validated if he knew how they were used. (*Id.* at 31:19–32:19.) Knowing whether the batteries were used in his mod and how frequently would be crucial to validating that assumption. Likewise, the actual use of these batteries is relevant to determining their failure mode. (*Id.*) Sandberg ignores the possibility that batteries toted loose in a pocket with other items could be damaged—either externally or internally. (Ex. A, Sandberg Dep. at 13:9–19).

Similarly, although Sandberg claims that the batteries are defective in design, he has no evidence to support that conclusion either. Sandberg has not identified a single other incident involving an LG 18650 H2 battery with an undamaged wrapper that exploded in any person's pocket—much less in the manner he contends happened here. (*See generally* Ex. E, Sandberg Rep.) Instead, he relies entirely on a 2015 Federal Emergency Management Agency (FEMA) report from 2017 about fires and explosions associated with electronic cigarette use and attributed to any cause. Though the FEMA report identifies some incidents allegedly involving battery explosions in users' pockets, the report does not provide details about the specific batteries involved or the circumstances of their failures.[4] And the FEMA report notes that lithium ion batteries "are known to experience statistically rare failure events."[5]

Nevertheless, in his report, Sandberg opined that if electronic cigarette batteries "were an automobile, there would probably be immediate recalls." (Ex. A, Sandberg Dep. at 52:5–17; Ex. E, Sandberg Rep. at 10.) Sandberg has never worked in any capacity for a federal agency responsible for the monitoring, regulating, or recall of any product. Moreover, at his deposition, he acknowledged that he was unaware that the Food and Drug Administration

---

[4] Federal Emergency Management Association; "Electronic Cigarette Fires and Explosions in the United States 2009–2016," (July 2017); www.usfa.fema.gov/downloads/pdf/publications/electronic-cigarettes.pdf. This report relies on a collection of reports from media sources rather than any discrete, independent analysis of incidents. *Id.* at 32–54.

[5] *Id.* at 16.

24592644v3

1  (FDA) has complete authority to regulate the electronic cigarette industry. (Ex. A, Sandberg
2  Dep. at 38:21–41:2.) Yet, he conceded (as he must) that the FDA has not recalled or
3  forbidden the use of LG 18650 H2 or *any* kind of lithium ion batteries in electronic cigarette
4  devices. (*Id.* at 53:14–20.) Likewise, he agreed that the FDA materials that counsel for Oasis
5  Vape presented at his deposition demonstrated both that the FDA monitors supposed "vape
6  battery explosions"[6] and has expressly reviewed and considered the FEMA report on which
7  Sandberg relies. (*Id.* at 41:24–43:11.) Because he was unaware before his deposition that the
8  FDA regulated this industry, Sandberg also was ignorant of these two facts. (*Id.* at 45:13–
9  46:7.)

10   Sandberg also makes broad claims about what an "ordinary consumer" would expect
11  with respect to batteries, and likewise declares that Walsh is (and also is not) an ordinary
12  consumer. (*Id.* at 74:24–75:13; 76:13–21.) Even if it were proper for him to testify on this
13  topic, Sandberg has no facts to support his claims about ordinary consumers. Indeed, he
14  admits that he only "vaguely" understands what human factors analysis entails. (*Id.* at
15  23:23–24:19.) Sandberg has no basis to offer opinions about what an ordinary consumer
16  would expect and his conclusions on this point are connected to underlying data only by his
17  own say so. *See Gen. Elec. Co. v. Joiner*, 552 U.S. 136, 146 (1997); *Pincock v. Dupnik*, 146
18  Ariz. 91, 96 (App. 1985) ("it is well to remember [that expert testimony] is not, as some
19  current practice suggests, a mechanism for having someone of elevated education or station
20  engage in a laying on of hands, placing an imprimatur, upon the justice of one's cause.")
21  (quoting M. Udall & J. Livermore, Arizona Practice: Law of Evidence § 22 (2d ed. 1982) at
22  28).

23  . . .

24  . . .

25

---

[6] The FDA acknowledges that "Vape" battery explosions are rare and the exact causes of these incidents are not known. The various safety tips published by the FDA after the incident are virtually the same information available to Walsh on every subsequent visit. (*Compare* Ex. 3 to Sandberg Dep., attached as Ex. G *with* Ex. F.) Further, the FDA tips provide insight as to potential causes for explosion that underscores the value of examining all of the evidence in vaping cases.

24592644v3

**C. Chet Sandberg's design defect opinions are not the products of a reliable methodology.**

Sandberg's opinions in this case depend on him telling a jury that because he could demonstrate—after multiple tries—that he could intentionally manipulate metal keys on a metal key ring around an LG 18650 H2 battery to cause a short, that this is what caused the explosion in this case. Essentially, he wants to tell the jury that because something *could* happen, it *did* happen. This is not appropriate under Rule 702 and certainly not valid methodology for fire and explosion investigation. *Cecala v. Newman*, 532 F. Supp. 2d 1118, 1161 (D. Ariz. 2007) ("[A]bstract pronouncements cannot take the place of actual proof. Causation must be inferred from facts, not from bare expert endorsement."); *Johnson v. Avco Corp.*, 702 F. Supp. 2d 1093, 1108–09 (E.D. Mo. 2010) ("We do not allow witnesses to tell juries that in their expert opinion something happened simply because it is possible."); *see also Werth v. Hill-Rom, Inc.*, 856 F. Supp. 2d 1051 (D. Minn. 2012) (excluding expert opinion that showed a way an event could have happened, but was "replete with possibilities and conjecture" as to what did happen).

Sandberg attaches as an Appendix to his rebuttal report what he describes as a "probable 'Scientific Method' analysis." (Appendix B to Rebuttal Report of Chester Sandberg, attached as Ex. H.) In it, he describes the question he set out to answer: whether there is "enough energy and an electrical mechanism available in an 18650 cell to explode and cause damage in a user's pocket." (*Id.*) He conducted and video-recorded an experiment showing that he could cause a short circuit. Then, he states as his "Results/Conclusion:" "The probable cause of explosion in Mr. Walsh's pants was an 18650 cell short circuit initiated by keys and/or change in his pocket." (*Id.*)

Sandberg agrees with Oasis Vape's expert about "basically everything he said about the failure modes" of a lithium-ion battery, identifying five primary modes. (Ex. A, Sandberg Dep. at 19:3–15.) As he acknowledged, lithium-ion batteries can fail as the result of internal shorts, external shorts, overcharging, and damage. In the absence of evidence showing why the *specific* batteries at issue in this case failed, Sandberg merely tested his

11

theory—that keys shorted the battery—and concluded "yep, that was the one that probably happened." (*Id.* at 19:16–20:5.) He did nothing to test whether the batteries failed for any other reason because "in my mind, it's clear that the battery in his pocket was shorted out by his keys or his change or something, and that's what happened." (*Id.* at 22:16–21.)

A purported expert cannot testify that something happened because he says it happened. *Joiner*, 552 U.S. at 146 (holding that court properly excludes testimony based on *ipse dixit* of expert). It is not proper under Rule 702 and is contrary to the specific guidelines of NFPA 921. *Id.*; *Daubert*, 509 U.S. at 590 (explaining that expert opinions must be based on principles, techniques, and theories that are generally accepted in the profession). Under NFPA 921, forming a causation theory depends on collecting evidence and ruling out hypotheses through analytical processes and testing. NFPA 921 (2021) 19.6.4. If a hypothesis cannot be tested because of the absence of data, it is considered invalid. *See Philadelphia Indem.*, 2015 WL 5693525 *7 ("Any hypothesis that is incapable of being tested either physically or analytically, is an invalid hypothesis. A hypothesis developed based on the absence of data is an example of a hypothesis that is incapable of being tested" (*quoting* NFPA 921 § 4.3.6.1)).

Sandberg has not complied with these principles. In the absence of evidence, he formed an opinion as to what "probably" happened and declared it to be true. Rather than developing hypotheses and attempting to rule them out, Sandberg identified his hypothesis and attempted to rule it in. This is contrary to accepted fire and explosion investigation methodology. Thus, his causation theory must be excluded.

Likewise, Sandberg's defect theory is based on unreliable methodology. Because Sandberg has been able to create a situation in which an LG 18650 battery failed, he claims that it is defective in design. Importantly, he has done none of the risk-benefit analysis necessary to determine whether the risks of the design outweighs the benefits. He has done no work to determine what an average consumer would expect or know. And he has no basis to disagree with the federal government's conclusion that battery explosions in pockets (for any reason) are rare events that have not warranted regulatory action.

**IV.    Chet Sandberg's Warnings Opinions Must be Excluded.**

In addition to his design defect opinion, Sandberg has opined that Oasis Vape's warnings about LG 18650 batteries were defective and caused Walsh's injuries. These opinions do not comport with Rule 702: they do not assist the jury, Sandberg is not qualified to offer them, and they are not based on any reliable methodology or study.

**A.    Chet Sandberg's warnings opinions are irrelevant and will not assist the jury because Walsh's testimony establishes as a matter of law he would not have heeded warnings.**

To be admissible under Rule 702, proffered expert testimony must "'assist the trier of fact,'" a "condition [that] goes primarily to relevance." *Daubert,* 509 U.S. at 591 (quoting Rule 702). When expert testimony is not "sufficiently tied to the facts of the case," it is not admissible because it will not help the jury determine a fact at issue. *Id.*

At his deposition, Sandberg conceded that even if Walsh had received a warning not to carry loose batteries in his pockets with metal objects, he "probably wouldn't have" heeded the warning because "[h]e said he didn't read [warnings]." (Ex. A, Sandberg Dep. at 83:14–84:2.) If Sandberg agrees that Walsh would not have heeded a proper warning even if he received it, then none of his criticisms offered about the efficacy or adequacy of the warnings Oasis Vape provided is relevant to an issue the jury will decide. What's more, under Arizona law, a plaintiff who habitually does not heed warnings cannot establish that a warning would have changed his behavior. *Cf. Feuerstein v. The Home Depot, U.S.C., Inc.*, No. 1:12-cv-010562 JWS, 2014 WL 2557122, at *6 (D. Ariz. June 6, 2014). Sandberg's warnings opinions must be excluded.

**B.    Chet Sandberg is not qualified to offer warnings opinions.**

Sandberg is not a human factors expert and only "vaguely" understands what "human factors analysis is in the context of a warning." (Ex. A, Sandberg Dep. at 23:22–25:7.) He has no experience evaluating the efficacy of warnings other than ensuring that a product's warning label was printed in multiple languages and being involved in the development of a product with instructions in which "focus-group guys" evaluated whether they were effective. (*Id.* at 24:12–25; 25:1–28:6.) He has no experience designing or evaluating

13

warnings relating to the vaping industry or batteries. This is insufficient to provide expert testimony about the adequacy of Oasis Vape's warnings. *See Feuerstein v. Home Depot, U.S.A.,* No. 2:12-cv-01062, 2014 WL 2557123 *3 (D. Ariz. Jun. 6, 2014) (excluding warnings opinions when witness had no training or experience relating to ladder warnings).

### C. Chet Sandberg has not employed any reliable methodology in reaching his warnings opinions.

According to Sandberg, the warnings associated with this product are inadequate because if "they had been adequate. . . [Walsh] wouldn't have put it in his pocket." (Ex. A, Sandberg Dep. at 31:1–6.) He disputes that the receipt warnings Oasis Vape began including in late 2015 were adequate because "nobody looks at receipts." (*Id.* at 58:18–23.) With respect to warning cards and posters in the store, Sandberg testified "I have no criticism of the warnings themselves, but I don't know that [Walsh] looked at them or picked them up or would even care . . . it's like reading the verbiage on a car rental thing that you never do, you just sign it." (*Id.* at 59:4–20.) In Sandberg's opinion, he "would like" warnings to be verbal instead. (*Id.* at 59:21–60:16.)

Sandberg offers no factual or methodological bases for any of these opinions about warnings. He relies on no human factors literature or data to determine what constitutes an adequate warning for products like the Subject Batteries. He has done no research or testing on the efficacy of battery warnings—either Oasis Vape's or anyone else's. He relies only on his own subjective belief that the warnings should have been different and the fact that the incident occurred to establish that there was a defect. This is contrary to law. *See Lunt v. Brady Mfg.*, 13 Ariz. App. 305 (1971) ("strict liability cannot be equated with absolute liability, i.e., that the occurrence of an accident does not per se make the seller liable."). And it is contrary to Sandberg's own experience. He testified that when he "worked with our lawyers" on warnings issues in the past, "it didn't completely eliminate all the bimbos." (Ex. A, Sandberg Dep. at 62:6–13.) In other words, in Sandberg's experience, incidents can occur even in the face of adequate warnings.

. . .

14

**D.     Chet Sandberg did not apply reliable methodology to the facts of this case.**

Not only has Sandberg failed to apply any reliable methodology to form his conclusion that Oasis Vape's warnings were deficient, he has no reliable basis to conclude that any alleged warning defect caused this incident. As Sandberg has acknowledged, he does not know whether Walsh would "even care" about any warning—and affirmatively testified that Walsh "probably wouldn't have" heeded a warning because "[h]e said he didn't read [warnings]." (*Id.* at 59:4–20; 83:14–84:2.)

Sandberg has offered no methodology about the likelihood of someone like Walsh responding to any kind of warning—verbal or otherwise—given his stated tendency to disregard warnings. His opinions depend entirely on his subjective conclusion that a different warning would have been effective.

## CONCLUSION

The Court should exclude Sandberg's opinions and testimony in this case. Walsh cannot meet his burden of showing that his testimony complies with the requirements of Rule 702. Sandberg's defect and causation opinions will not assist the jury and are based on Sandberg's conclusory assertions that because it was possible for batteries to fail as the result of contact with metal keys in a pocket, they *did* fail this way. With respect to his warnings opinions, Sandberg has offered nothing more than baseless conjecture contradicted by Walsh's testimony that he does not read warnings. Accordingly, his testimony should be excluded in its entirety.

DATED this 21st day of June, 2021.

BOWMAN AND BROOKE LLP


By: s/ *Lori A. Zirkle*
    Lori A. Zirkle
    Charles M. Seby
    Suite 1600, Phoenix Plaza
    2901 North Central Avenue
    Phoenix, AZ 85012-2761

24592644v3

Tori S. Levine (*Admitted Pro Hac Vice*)
BOWMAN AND BROOKE LLP
5830 Granite Parkway, Suite 1000
Plano, Texas 75024

Attorneys for Defendant Oueis Gas, Inc.

# **CERTIFICATE OF SERVICE**

I hereby certify that on June 21, 2021, I electronically transmitted the foregoing **DEFENDANT OUEIS GAS, INC.'S MOTION TO EXCLUDE THE TESTIMONY AND OPINIONS OF CHESTER SANDBERG PURSUANT TO FEDERAL RULE OF EVIDENCE 702** to the Clerk's Office using the CM/ECF System for filing thereby transmitting a Notice of Electronic Filing to the following CM/ECF registrants:

B. Lance Entrekin
THE ENTREKIN LAW FIRM
3101 North Central Avenue, Suite 740
Phoenix, Arizona 85012
lance@entrekinlaw.com

*Attorney for Plaintiff*

            s/Marcie Buchanan

24592644v3