1  Lori A. Zirkle (SBN 015365)
   Charles M. Seby (SBN 035523)
2  **BOWMAN AND BROOKE LLP**
   Suite 1600, Phoenix Plaza
3  2901 North Central Avenue
   Phoenix, Arizona 85012-2761
4  Telephone: (602) 643-2300
   Lori.Zirkle@bowmanandbrooke.com
5  Charles.Seby@bowmanandbrooke.com

6  Tori S. Levine (*Admitted Pro Hac Vice*)
   **BOWMAN AND BROOKE LLP**
7  5830 Granite Parkway, Suite 1000
   Plano, Texas 75024
8  Telephone: (972) 616-1700
   tori.levine@bowmanandbrooke.com
9
   Attorneys for Defendant Oueis Gas, Inc.
10

11              **UNITED STATES DISTRICT COURT**

12             **FOR THE DISTRICT OF ARIZONA**

13  Christopher Walsh,                        )   Case No. 2:18-CV-01545-SPL
                                              )
14           Plaintiff,                       )
                                              )   **OUEIS GAS, INC.'S REPLY IN SUPPOR**
15  v.                                        )   **OF ITS MOTION TO EXCLUDE THE**
                                              )   **TESTIMONY AND OPINIONS OF**
16  LG Chem America, a Delaware corporation;  )   **CHESTER SANDBERG PURSUANT TO**
    Oueis Gas, Inc. a New Mexico corporation; LG)  **FEDERAL RULE OF EVIDENCE 702**
17  Chem, Ltd., a South Korea corporation,    )
                                              )
18           Defendants.                      )
                                              )
19

20        The Court should grant Defendant Oueis Gas, Inc.'s ("Oasis Vape") Motion to Exclude

21  the Testimony and Opinions of Chester Sandberg Pursuant to Federal Rule of Evidence 702

22  (Doc. 104) ("Motion"). Walsh's response (Doc. 113) does nothing to establish the

23  admissibility of Sandberg's opinions.

24  **I.      INTRODUCTION**

25        As explained in Oasis Vape's Motion, Sandberg's opinions and testimony fail at every

26  step under Rule 702. Sandberg does not dispute that because the incident batteries are gone,

27  he cannot test his hypothesis that the batteries exploded after interacting with keys, which were

28

                                        1

1   also discarded before Oasis Vape could examine them.[1] The underlying premise to each of his

2   opinions—that is, that the subject batteries were sold by Oasis Vape, which is essential to

3   establishing causation—is no more than an assumption based on speculation over Walsh's say-

4   so and a dated receipt selected among myriad battery purchase invoices from other retailers.

5   The methodologies that Sandberg uses to produce his opinions (both as to the alleged design

6   and warning defects) are not reliable, and Sandberg likewise does not apply reliable

7   methodologies to the facts of this case. Moreover, Sandberg is not properly qualified to render

8   his warnings opinions. Sandberg's opinions cannot assist the trier of fact, and the Court should

9   exclude them as insufficient under Rule 702.

10  **II.     ARGUMENT**

11          Walsh has the burden of establishing that Sandberg's testimony satisfies every prong

12  of Federal Rule of Evidence 702. *See, e.g.*, Fed. R. Evid. 104, 702; *Davis v. McKesson Corp.*,

13  No. CV-18-1157-PHX-DGC, 2019 WL 3532179, at *3–4 (D. Ariz. Aug. 2, 2019). This

14  includes demonstrating that Sandberg has explained the basis for his conclusions so that the

15  Court may determine whether they are the products of reliable principles and methods reliably

16  applied to the facts of the case. *Davis*, 2019 WL 3532179, at *4. Walsh has not met this burden.

17          **A.      Sandberg's design defect opinions do not satisfy Rule 702.**

18          Oasis Vape pointed out that Sandberg's design defect opinions are bare legal

19  conclusions lacking any analysis of the relevant risks and benefits or of the expectations of the

20  average consumer. (Doc. 104 at 7.) In response, Walsh insists that Sandberg "did extensive

21  cost/benefit analysis." (Doc. 113 at 9.)  In support of this statement, Walsh offers two pages

22  of deposition testimony in which Sandberg merely answers "correct" to a series of leading

23  questions from Walsh's counsel about supposed alternative designs, before stating that the

24  harmful characteristics of the batteries' design outweighs their benefits "because the

25  downsides of the thing when it fails is significant personal injury." *Id.*; Doc. 113-10 at 6–7

---

26  [1] As he does in other briefings, Walsh continues to claim that "[n]either side's expert has ever
27  seen the actual keys that were on the keychain." (Doc. 113 at 3.) This is false. Sandberg
    testified that he did see the keys, though he failed to conduct any meaningful analysis of them
28  before Walsh discarded them.  *See* Oueis Gas, Inc.'s SSOF in Support of its Motion for
    Summary Judgment, Doc. 107-1 at 54–55 (Sandberg Dep. at 11:17–12:14).

1    (Sandberg Dep. at 112–13). Walsh points to nothing in Sandberg's testimony or report to

2    establish that he performed any analysis to reach his conclusions. Sandberg identifies no other

3    products on the market in 2015 that had these supposed alternative designs, nor does he offer

4    any evidence of the supposed efficacy of these alternative designs. Indeed, he admitted that he

5    had done no research on the topic. (Doc. 104, Ex. A at 84:16–85:5.) Likewise, Sandberg

6    identifies no research or studies to establish that a product with an alternative design would

7    not result in "significant personal injury" if it failed. It is well established that "[t]he fact that

8    an alternate safety feature may be available does not in and of itself render a product, which

9    has adopted a different type of safety device, defective and unreasonably dangerous." *Brown*

10   *v. Sears, Roebuck Co.*, 136 Ariz. 556, 563 (Ariz. Ct. App. 1983). And a "product need not be

11   foolproof." *Anderson v. Nissei Asb Machine Co.*, 197 Ariz. 168, 179 (Ariz. Ct. App. 1999).

12   Yet, all Sandberg has offered is his conclusion that the product is defective because he believes

13   hypothetical alternative designs were possible and the existing design poses risks. This is not

14   just an improper and baseless legal conclusion, it is one in conflict with Arizona law. Thus, it

15   will not assist the jury and is inadmissible under Rule 702.

16          Apparently attempting to deflect attention from his inability to show any methodology

17   to support Sandberg's opinions, Walsh attempts to defeat Oasis Vape's arguments by

18   mischaracterizing them. He says that Oasis Vape has claimed that "[Sandberg] must be a

19   human factors expert to offer design opinions" and that "an expert cannot opine a product is

20   defective[.]" (Doc. 113 at 9.) But it argued no such thing. All Oasis Vape has argued is that

21   under Rule 702, a witness who offers defect opinions must be qualified to testify on the topic

22   and his opinions must be the product of a reliable methodology. Walsh has not met this burden

23   with respect to Sandberg's defect opinions.

24          **B.      Sandberg's causation opinions do not satisfy Rule 702.**

25          Sandberg wishes to tell the jury how and why the explosion occurred in Walsh's pocket.

26   But by his own admission, he simply does not have sufficient facts to test or confirm this

27   hypothesis. Thus, his opinions do not comply with Rule 702.

28

1    Sandberg's opinions and testimony are not based on sufficient facts or data—rather,

2    they are based on a pre-selected assortment of evidence and a consistent disregard of relevant

3    information that could inform alternative hypotheses.[2] Contrary to Walsh's assertions,

4    Sandberg did not properly follow NFPA 921, nor did he "gather[] extensive evidence and

5    subject[] it to extensive analysis" under that standard. His opinions come down to his *ipse dixit*

6    conclusion that because he thinks something *could* happen, it means that it *did* happen.

7    This is not sufficient to withstand the scientific requirements of Rule 702. *See, e.g.*,

8    *Davis*, 2019 WL 3532179, at *9 ("Scientific methodology today is based on generating

9    hypotheses and testing them to see if they can be falsified; indeed, this methodology is what

10   distinguishes science from other fields of human inquiry. Merely generating hypotheses – even

11   reasonable ones – is not enough. In order to qualify as scientific knowledge an inference or

12   assertion must be derived by the scientific method. Proposed testimony must be supported by

13   appropriate validation – i.e., good grounds, based on what is known.") (internal quotations

14   omitted). Walsh's suggestion that Sandberg found "no evidence" to support the probability of

15   an alternative hypothesis and insistence that there is "no evidence . . .  of substantial prior

16   battery damage" is undermined by Walsh's and Sandberg's testimony and the realities of the

17   spoliated evidence. (Doc. 113 at 11.) For months, Walsh carried these batteries loose in his

18   pockets, along with metal keys. And Walsh has no recollection of their condition. *See*

19   Sandberg Dep., Doc. 104-1 at 6 ("Q. The battery that was in Mr. Walsh's pocket at the time

20   [of the explosion], did it have any damage to it before the thermal runaway? A. I don't know");

21   Walsh Dep., Doc. 107-1 at 24–25 (Walsh testifying that he "[c]an't confirm" whether the

22   subject batteries were "showing any wear on the wrapper" in November 2016), 33–34 (Walsh

23

---

24   [2] The recital Walsh provides in his response as to the extent of Sandberg's "data gathering" is itself in tension with the record. (*Compare* Doc. 113 at 3 ("[Sandberg] . . . interviewed [Walsh] . . . [and] later read the deposition[] of [Walsh]), *with* Sandberg Dep. at 56–106 (Q. You had
25   an opportunity to interview Mr. Walsh, correct? A. No, I just talked to him. I didn't really interview him. . . . Q. When you interviewed Mr. Walsh, did you ask him anything about his
26   vaping habits for any of the scientific questions which would allow you to evaluate how hard he used his batteries? A. No, I didn't interview him really. I think the only thing I asked him
27   is if he saw the video[.]"), 13 ("Q. The battery that was in Mr. Walsh's pocket at the time, did it have any damage to it before the thermal runaway? A. I don't know. Q. Why not? A. I think
28   he said that it didn't have any damage, but I'm not sure what he said in his deposition.").)

1    agreeing that he "had been carrying lithium-ion batteries in [his] pocket for . . . almost two

2    years before the incident . . . [w]ith keys."). Sandberg can no more validly rule out damage as

3    a potential cause of this event than he can confirm his own proposed theory. He has no

4    evidence as to either. "While 'no one denies that an expert might draw a conclusion from a set

5    of observations based on extensive and specialized knowledge,' . . . expert opinions based on

6    unsubstantiated generalizations or opinions not derived by the scientific method must be

7    excluded." *Krause v. Cty. of Mohave*, 459 F. Supp. 3d 1258, 1264 (D. Ariz. 2020) (quoting

8    *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999)).

9         Relatedly, Walsh's pronouncement that Sandberg "testified regarding over 100

10   substantially similar incidents" is misleading. (Doc. 113 at 10.) At his deposition, Sandberg

11   merely *acknowledged* the existence of reports that batteries have exploded. He did not

12   identify—much less testify—about how any of these incidents were supposedly "substantially

13   similar." Indeed, Sandberg readily agrees that batteries can explode for numerous reasons. (*See*

14   Doc. 104-1 at 7 (testifying as to the various potential battery failure modes).) And in any event,

15   even if Sandberg had identified other truly "substantially similar" incidents involving

16   undamaged batteries interacting with car keys in a pocket (he did not), that still would not do

17   anything to show what happened here.

18        Sandberg's opinion cannot help the jury because he has performed no methodologically

19   valid work to show that what he thinks *could* happen, *did* happen in this case. Thus, his

20   opinions must be excluded.

21        **C.      Sandberg's warnings opinions do not satisfy Rule 702.**

22        As explained in the Motion, Sandberg lacks the basic qualification to testify about

23   warnings for batteries used in vaping devices. His Stanford education, experience as an

24   electrical engineer, and general familiarity with warnings on other products (as touted in the

25   response, *see* Doc. 113 at 11–12) do not demonstrate qualifications in this case. *See Diviero v.*

26   *Uniroyal Goodrich Tire Co.*, 919 F. Supp. 1353, 1357–58 (D. Ariz. 1996) (excluding engineer

27   with experience working with tires, but who had no experience with the steel belted radial tires

28   at issue). Under Rule 702, Walsh must establish that Sandberg is qualified through

1   "knowledge, skill, experience, training, or education" to offer warnings opinions. Without

2   citing anything in the record, Walsh merely repeats that Sandberg "has years of experience

3   designing lithium ion batteries, designing electrical fire warnings and working with lithium

4   ion battery consumers." *See Howard v. Ethicon,* 472 F. Supp. 3d 559 (D. Ariz. 2020) ("The

5   party who seeks to introduce expert testimony evidence must show by a preponderance of the

6   evidence that the testimony is admissible under Rule 702."). (Doc 113 at 12.) And Sandberg

7   admits that he is unfamiliar with the use of lithium-ion batteries in the vaping context.

8   *Feuerstein v. Home Depot, U.S.A.*, No. 2:12-cv-01062, 2014 WL 2557123 (D. Ariz. Jun. 6,

9   2014) is applicable. Like the plaintiffs there, Walsh, "who ha[s] the burden to prove

10  admissibility, provide[s] no evidence that [Sandberg] has had any training or education related

11  to [battery] warnings or instructions" in the vaping context. *Id.* at *3. Thus, his warnings

12  opinions should be excluded.

13       But even if Sandberg were qualified to testify, his failure to support his warnings

14  opinions with any methodology render them inadmissible. Rather than responding to Oasis

15  Vape's arguments, Walsh cites *Triant v. AMS,* CV-12-00450-PHX, 2020 WL 4049844 (D.

16  Ariz. July 20, 2020), and insists that because Sandberg is supposedly qualified to talk about

17  warnings (he is not), his methodology is therefore valid. Untrue. (Doc. 114 at 12.)

18  Qualifications alone do not establish the admissibility of testimony under Rule 702. *Daubert*

19  *v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) (excluding opinions as

20  unreliable notwithstanding "the impressive qualifications of plaintiffs' experts"). And *Triant*

21  does not demand a different conclusion. In fact, Walsh misrepresents its holding. There, this

22  District excluded a physician from testifying about product warnings, explaining that

23  "'[w]ithout additional expertise in the specific area of product warnings, a doctor such as an

24  urogynecologist, is not qualified to opine on the adequacy of a product warning FIU merely

25  because he is familiar with the products in question in his own practice.'" CV-12-00450-PHX,

26  2020 WL 4049844 *5, quoting *In re C.R. Bard, Inc., Pelvic Repair Sys. Prods. Liab. Litig.,*

27  No. MDL 2187, 2018 WL 605064 *4 (S.D. W. Va., Jan. 29, 2018) (alterations in *Triant*).

28

1       Walsh does not explain what methodology Sandberg used to reach his warnings

2   opinions, let alone demonstrate that it was reliable. Oasis Vape outlined just a few of the factors

3   that render Sandberg's warnings opinions unreliable—including that he has not performed any

4   research or testing on the efficacy of battery warnings and relies on no scholarly studies on the

5   topic. Walsh still has not explained *what* Sandberg has done to reach his conclusions; he just

6   insists that he can offer them. This is not consistent with Rule 702.

7       Finally, Walsh has failed to establish that Sandberg applied a reliable methodology to

8   the facts of this case. Sandberg himself conceded that even a sufficient warning would have

9   achieved nothing to alter Walsh's disregard for product warnings. (*See* Doc. 104 at 15

10  (explaining testimony of Sandberg in which Sandberg admitted that Walsh probably would

11  not care about, and would not have heeded, a warning because Walsh stated, under oath, that

12  Walsh did not read warnings).)

13  **III.   CONCLUSION**

14      Because Walsh has not met his burden of establishing admissibility under Rule 702, the

15  Court should grant Oasis Vape's Motion and exclude Sandberg's opinions.

16      DATED this 8th day of July, 2021.

17                          BOWMAN AND BROOKE LLP

18

19                      By: *s/Charles M. Seby*

20                           Lori A. Zirkle
                         Charles M. Seby

21                           Suite 1600, Phoenix Plaza
                         2901 North Central Avenue

22                           Phoenix, AZ 85012-2761

23                           Tori S. Levine (*Admitted Pro Hac Vice*)
                         **BOWMAN AND BROOKE LLP**

24                           5830 Granite Parkway, Suite 1000
                         Plano, Texas 75024

25                           Attorneys for Defendant Oueis Gas, Inc.

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on July 8, 2021, I electronically transmitted the foregoing **OUEIS GAS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE THE TESTIMONY AND OPINIONS OF CHESTER SANDBERG PURSUANT TO FEDERAL RULE OF EVIDENCE 702** to the Clerk's Office using the CM/ECF System for filing thereby transmitting a Notice of Electronic Filing to the following CM/ECF registrants:

B. Lance Entrekin
THE ENTREKIN LAW FIRM
3101 North Central Avenue, Suite 740
Phoenix, Arizona 85012
lance@entrekinlaw.com

*Attorney for Plaintiff*

_s/Marcie Buchanan_____