**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christopher Walsh, ) | No. CV-18-01545-PHX-SPL |
| ) | |
| Plaintiff, ) | |
| ) | **ORDER** |
| vs. ) | |
| ) | |
| LG Chem America, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

Before the Court is Plaintiff's Motion to Exclude Some Opinions of Defendant's Design Defect Expert, Richard Marzola. (Doc. 102). The Motion has been fully briefed and is ready for review.[1] (Docs. 102, 122, 123). Plaintiff seeks to exclude three specific parts of expert Richard Marzola's report ("Marzola Report") and one part of Mr. Marzola's deposition. (Doc. 102 at 3, 11). The Motion will be denied in part and granted in part, as set forth below.

**I.    BACKGROUND**

This is a products liability case involving two batteries from a vaping device. (Doc. 30 at 2). Plaintiff purchased the vaping device and batteries from Defendant retail smoke shop Oueis Gas, Inc. on October 28, 2015. (Doc. 30 at 2). On November 18, 2016, Plaintiff alleges those same batteries reacted with a set of keys in his right pocket and exploded,

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motion is suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

causing serious burns. (Doc. 30 at 2). Plaintiff filed a complaint against Defendant on May 22, 2018, with four counts: (1) negligent design; (2) negligent failure to warn; (3) strict liability/design defect; and (4) strict liability/information defect. (Doc. 30 at 3–4).

Following the incident, Plaintiff negligently failed to preserve the batteries and keys as evidence. (Doc. 131 at 5). As a result, Defendant moved for an adverse instruction based on Plaintiff's spoliation of evidence, which this Court granted. (Doc. 131 at 6).

In preparing its case, Defendant consulted Richard Marzola, a senior electrical engineer for SEA, Ltd., as a design defect expert. (Doc. 102-2 at 6). Marzola was asked "to review file materials and determine the cause of the incident and if the battery cell was defective." (Doc. 102-2 at 6). On July 5, 2020, Marzola issued his report and drew several conclusions, three of which are the subject of this Motion. On June 15, 2021, Marzola was deposed by both parties. Plaintiff seeks to exclude one portion of the deposition.

## II.  LEGAL STANDARD

Federal Rule of Evidence ("FRE") 702 permits parties to file motions to exclude to ensure relevance and reliability of expert testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152–53 (1999). Courts have a "gatekeeping" function when it comes to expert testimony. *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010), *as amended* (Apr. 27, 2010). "When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony." *Id.* When the expert does not meet the threshold, the Court may prevent her from providing testimony. *See Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) ("Basically, the judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable.").

"Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." Fed. R. Evid. 401. Reliability is determined separately. "The trial court must first assess whether the testimony is valid and whether the reasoning or methodology can

properly be applied to the facts in issue." *Puente v. City of Phx.*, No. CV-18-02778-PHX-JJT, 2021 WL 1186611, at *1 (D. Ariz. Mar. 30, 2021) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993)). "The focus . . . must be solely on [the expert's] principles and methodology, not on the conclusions that they generate." *Id.* (citing *Daubert*, 509 U.S. at 594).

### III. DISCUSSION

In the Motion, Plaintiff seeks to exclude three of Marzola's conclusions in the report. Plaintiff also seeks to exclude Marzola's statement made during his deposition. Each will be discussed in turn.

**A. Marzola's Conclusion That Identification of Manufacturer and Determination of Cause of Explosion is "Pure Speculation" Without Physical Examination of Incident Cells**

Marzola's report concludes that any confirmation of the manufacturer of the incident cells is "pure speculation" without physical examination of the cells. (Doc. 102-2 at 6, 20). It also concludes that "it is of the opinion of [this report]" that without examination of the cells "this precludes anyone from determining the manufacturer . . . and the cause of the thermal runaway event." (Doc. 102-2 at 7, 27). Plaintiff argues these conclusions should be excluded because they "opine on how much weight jurors should assign to certain pieces of fact evidence." (Doc. 102 at 3). Plaintiff also argues for exclusion under the *Daubert* standard. (Doc. 102 at 4–5). Finally, Plaintiff argues that the conclusions improperly "diminish the credibility" of fact witnesses Plaintiff Walsh and Lindsay Niziolek (Walsh's former girlfriend). (Doc. 102 at 5).

In arguing that Marzola's conclusions improperly instruct jurors on the weight of evidence, Plaintiff cites to *Dietz v. Waller*, 141 Ariz. 107, 685 P.2d 744 (1984). In *Dietz*, a boat broke apart and the owner sued the maker of the boat under strict liability. *Id.* at 109, 685 P.2d at 746. The issue was whether the plaintiff's circumstantial evidence at trial was sufficient to submit the case to the jury. *Id.* at 108, 685 P.2d at 745. The Arizona Supreme Court held that plaintiffs "must be permitted to rely upon circumstantial evidence alone in strict liability cases, because it is unrealistic to expect them to otherwise be able to prove

that a particular product was sold in a defective condition." *Id.* at 110, 685 P.2d at 747.

Plaintiff's argument is that Marzola's conclusions—that any manufacturer confirmation or cause determination is "pure speculation" absent physical inspection—violate the *Dietz* standard by "instruct[ing] the jury" to disregard Plaintiff's circumstantial evidence. (Doc. 102 at 4). This is a mischaracterization of *Dietz*. As *Dietz* relates to this case, it stands only for the proposition that plaintiffs be permitted to rely on circumstantial evidence alone in strict liability cases. Here, the admission of Marzola's conclusions does not prevent Plaintiff from relying on circumstantial evidence. His conclusions do not require or instruct the jury to disregard the circumstantial evidence. And while his conclusions may contradict the conclusions Plaintiff wishes to be drawn from the circumstantial evidence, this is not equivalent to preventing Plaintiff from relying on circumstantial evidence altogether, which is all that *Dietz* prohibits. The jury will hear the evidence of both sides—Plaintiff's circumstantial evidence and the conclusions of Marzola's report—and will be free to weigh the evidence on its own. This Court holds that Marzola's conclusions cannot be said to instruct the jury on the weight of evidence.

Next, Plaintiff appears to make a *Daubert* argument for exclusion, though it is unclear just how Marzola's conclusions violate FRE 702 or the *Daubert* standard. FRE 702 allows an expert witness to testify "in the form of an opinion or otherwise if (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact issue, (2) the testimony is based on sufficient facts or data, (3) the testimony is the product of reliable principles and methods, and (4) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Meanwhile, *Daubert* provides factors for trial courts to use in assessing the reliability of expert testimony. *Daubert*, 509 U.S. at 593–94.

Plaintiff's Motion does not meaningfully address how either of the above conclusions violate FRE 702 or the *Daubert* standard. It does not argue that Marzola lacks scientific, technical, or other specialized knowledge to help the jury understand the

evidence.[2] Absent argument otherwise, Marzola's education, experience, certifications, and professional background raise no concerns as to his qualifications. (*See* Doc. 102-2 at 29–30). And his testimony stands to help the jury understand the evidence by explaining how the batteries would have been analyzed and by providing other potential causes of thermal runaway, aside from only manufacturing defects.

Plaintiff also does not dispute that Marzola's conclusions were based on sufficient facts or data, or that they were the product of reliable principles and methods. The report includes a long list of material that Marzola reviewed prior to its preparation. (Doc. 102-2 at 9–10). This included the surveillance footage and Plaintiff's own deposition testimony. *Id.* The report then details the facts of the incident, provides basic background information on battery cells, and explains "what typical investigative analysis would have been conducted . . . if the battery cells had been retained." (Doc. 102-2 at 11–22). Absent argument otherwise, the conclusions appear to have been based on sufficient facts and data, and the product of reliable principles and methods.

Finally, Plaintiff gives no argument that Marzola's conclusion was not the result of reliable application of the report's principles and methods to the facts of this case. It is difficult to see how Plaintiff could even make that argument, given that Marzola's conclusions are merely that one cannot determine the manufacturer of the incident cells or the cause of thermal runaway without physical inspection of the incident cells.

Insofar as Plaintiff makes a *Daubert* argument, Plaintiff cites to *State Farm Fire & Casualty Co. v. Holland*, No. CA2007-08-025, 2008 WL 4058094 (Ohio Ct. App. Sept. 2, 2008), another case in which Marzola was an expert. In that case, the court excluded Marzola's opinion because it was "based upon unfounded factual assumptions" made by

---

[2] The Court notes that Plaintiff *does* raise issue with Marzola's qualifications in his Reply. *See* Doc. 123 at 2 ("Under Rule 702 . . . he has no qualifications that would assist a jury . . . ."). However, "[i]t is well established in this circuit that courts will not consider new arguments raised for the first time in a reply brief." *Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d 997, 1002 (D. Ariz. 2011) (quoting *Bach v. Forever Living Prods. U.S., Inc.*, 473 F. Supp. 2d 1110, 1122 n.6 (W.D. Wash. 2007)). Because Plaintiff waited until the reply brief to raise this issue, Plaintiff has deprived Defendant of any opportunity to respond. Therefore, the Court will not consider this argument.

another expert in the case. *Id.* at *5. Together, the two experts' opinions "were based upon facts not in evidence" and contradicted the undisputed testimony of eyewitnesses. *Id.* at *4–*5. This meant their opinions were unreliable under the *Daubert* standard. *Id.*

Here, Plaintiff does not meaningfully explain how Marzola's conclusions are similarly flawed. Indeed, it is difficult to see how Marzola's conclusion—that no conclusions can be drawn absent physical evidence—could be based upon unfounded factual assumptions. Plaintiff implies that Marzola ignored evidence that Defendant "did not like" in making his conclusions. (Doc. 102 at 4–5). The report indicates otherwise, showing that Marzola considered a substantial portion of the record—including the surveillance footage and Plaintiff's own deposition testimony—in preparing the report. (Doc. 102-2 at 9–10). Plaintiff has not given this Court any discernible reason to question the reliability of Marzola's conclusions. This Court holds that Marzola's conclusions as to manufacturer identification and cause determination do not run afoul of FRE 702 or the *Daubert* standard.

Finally, Plaintiff argues Marzola's conclusions should be excluded because their "primary purpose is to diminish the credibility" of Plaintiff's fact witnesses, Plaintiff Walsh and Ms. Niziolek. (Doc. 102 at 5). Plaintiff cites various cases holding that expert testimony can be excluded if its primary purpose is to cast doubt on the credibility of fact witnesses because such credibility determinations are left for the jury. (Doc. 102 at 5). None of the legal authority to which Plaintiff cites is persuasive. *See, e.g.*, *United States v. Candoli*, 870 F.2d 496 (9th Cir. 1989) (dealing with improper character evidence during expert testimony); *United States v. Dorsey*, 45 F.3d 809 (4th Cir. 1995) (dealing with expert testimony not based on scientific knowledge, flatly contradicting eyewitness testimony, and unhelpful to jury).

Here, Marzola's conclusions are not directly aimed at the credibility, character, or reputation of Plaintiff or Ms. Niziolek. While they may cast doubt on Plaintiff's theory of the case as presented by Plaintiff's witnesses, this is quite different than testimony speaking directly to the credibility of Plaintiff's witnesses through character or reputation evidence.

Evidence which tends to undermine or contradict one party's theory of the case is not necessarily evidence attacking the credibility of that party's fact witnesses. It is worth noting that Marzola's conclusions do not even entirely rule out Plaintiff's theory of the case; Marzola's conclusion is merely that physical examination is required to make a more definitive conclusion. This Court finds no reason to exclude Marzola's conclusions on the grounds that their primary purpose is to diminish the credibility of Plaintiff's fact witnesses.

### B. Marzola's Conclusion That a Thermal Runaway Event Can Occur for Various Reasons

The report states that a thermal runaway of a battery cell "can occur for various reasons, such as internal short circuit (due to an accident or similar mechanical impact), external short circuit (metal object bridges the positive and negative tabs of the battery cell), overcharging, excessive currents when charging or discharging, thermal abuse (external heating), or a manufacturing defect." (Doc. 102-2 at 7, 26). First, Plaintiff argues this conclusion should be excluded because it impedes Plaintiff's right to rely on circumstantial evidence. (Doc. 102 at 6–8). Second, Plaintiff argues for exclusion under the *Daubert* standard. *Id.*

Plaintiff again cites to *Dietz* to argue that admitting this conclusion on potential causes of thermal runaway would undercut Plaintiff's own right to use circumstantial evidence. *Id.* As explained above, this is a mischaracterization of *Dietz*. *Dietz* holds that plaintiffs may rely solely on circumstantial evidence in strict liability cases. 141 Ariz. at 110, 685 P.2d at 747. *Dietz* does not prevent defendants from questioning or rejecting the circumstantial evidence when presenting their own case. Allowing Marzola to suggest other possible causes of the thermal runaway does not prevent Plaintiff from relying solely on circumstantial evidence to prove his own case. The jury will still be permitted to consider, and believe, Plaintiff's circumstantial evidence.

Next, Plaintiff argues Marzola's conclusion on potential causes of thermal runaway violates *Daubert*. (Doc. 102 at 6–8). Plaintiff again does not challenge the reliability of

Marzola's conclusion with respect to any specific *Daubert* factor nor under any specific provision of FRE 702. Instead, Plaintiff argues the conclusion is unreliable under *Daubert* because it lists only "possibilities" and invites the jury to speculate on possible, but not probable, causes. (Doc. 102 at 5, 8). In support, Plaintiff cites to cases in which expert testimony was excluded because it lacked the evidentiary foundation to allow a jury to find it more likely than not to be true. (*Id.* at 6–7). In essence, the argument is that when an expert speculates as to possibilities, as opposed to probabilities, the testimony is unreliable under *Daubert*.

For example, in *Kalamazoo River Study Group v. Rockwell International Corp.*, 171 F.3d 1065, 1070 (6th Cir. 1999), the expert opined that the defendant contributed to the pollution of a lake. The court excluded the opinion because it was based on "speculation, conjecture, and possibility." *Id.* at 1072. This "inadequate factual basis" made the testimony scientifically unreliable under *Daubert*, which requires a court to "look beyond the conclusions [of the experts] to determine whether the expert testimony rests on a reliable foundation." *Id.* Similarly, in *Nemir v. Mitsubishi Motor Sales Corp. of America*, 60 F.Supp.2d 660, 663 (E.D. Mich. 1999), an expert sought to testify that it was possible for the plaintiff's seatbelt to have become "partially latched." This meant that the seatbelt looked to be properly latched, but nonetheless came free during the automobile accident. *Id.* The court excluded the testimony under *Daubert* because the expert demonstrated that partial latching was merely one possible explanation. *Id.* at 671–72. The court found that the expert's theory was missing "empirical evidence that would at least tend to eliminate some of the universe of other possible causes." *Id.* at 672.

These cases are inapposite to the present case. In *Kalamazoo* and *Nemir*, the experts were concluding that one specific possibility was more likely than others. In contrast, Marzola does not conclude that any of the potential causes of thermal runaway were more likely to be the cause than the others. His conclusion simply lists the various possible causes, and then states that he cannot opine as to one being more likely than any of the others without physical inspection of the incident cells. (Doc. 102-2 at 26). Importantly,

Marzola does not rule out a manufacturing defect as a cause either; he includes it among the various possibilities. *Id.* Additionally, in *Kalamazoo* and *Nemir*, there were significant reasons to question whether the experts' conclusions rested on reliable factual foundations. Here, Plaintiff gives no compelling reason to question whether Marzola's conclusion rests on a reliable foundation. In part, this is due to the inconclusive nature of his conclusion. Had Marzola's conclusion speculated that one possible cause was more likely than the others, it might be fair to question its evidentiary foundation as the courts did in *Kalamazoo* and *Nemir*.

In the Reply, Plaintiff notes that circuit courts "hold uniformly that even if an expert testifies that a source is a probable cause of a fire, if the Court . . . determines that the evidence renders the source a possibility and not a probability, the testimony is inadmissible." (Doc. 123 at 4 (citations omitted)). This principle is inapplicable to the present case. Marzola's conclusion does not assert that any one of the possible causes of thermal runaway were more possible or more probable than any of the others. Thus, it cannot be said that Marzola's conclusion should be excluded for lack of evidentiary support. Indeed, the very crux of Marzola's conclusion is that without the physical evidence, he cannot conclude that one potential cause was more or less likely than any of the others. Had Marzola been more conclusive as to the probable cause, a more robust evidentiary foundation would be needed to back it up.

Plaintiff argues that allowing this testimony "would give a defendant unlimited leeway" and that Marzola could just as easily testify "that the explosion in Plaintiff's pocket may have been caused by a tiny meteor moving too fast for the naked eye or a gas leak." (Doc. 123 at 5). This exaggeration mischaracterizes what Marzola concludes. Marzola lists recognized, scientific causes of thermal runaway. Had he included a tiny meteor as a potential cause, there would surely be reason to question the conclusion's evidentiary foundation. Instead, the possible causes of thermal runaway that Marzola listed were those which were, according to his expertise, scientifically accepted causes such as internal and external short circuits, overcharging, and manufacturing defects.

It appears that Plaintiff takes issue with Marzola's conclusion to the extent that it does not agree with Plaintiff's theory of the case. With the physical evidence missing, the parties have before them only circumstantial evidence. The parties agree that thermal runaway caused the explosion. Plaintiff believes that the circumstantial evidence is enough to conclude that the thermal runaway was caused by a manufacturing defect. Defendant, through Marzola, considered the same circumstantial evidence and concluded that it is impossible to know what caused the thermal runaway without inspection of the incident cells. In essence, Plaintiff asks this Court to exclude Marzola's conclusion not because it lacks a reliable foundation under *Daubert*, but because it does not go as far as Plaintiff's conclusion on the same evidence. Such a request is not supported by the *Daubert* standard.

**C. Marzola's Conclusion That LG HG2 Battery Cells Do Not Contain a Design Defect**

The report states that "[i]t is the opinion of S-E-A that the LG HG2 battery cells do not contain a design defect. The LG HG2 battery cells were tested in accordance with UL 1642 and IEC 62133:2012 Standards and met all of the requirements of both the UL 1642 and IEC 62133:2012 Standards when manufactured." (Doc. 102-2 at 7, 27). Plaintiff contends that Marzola's opinion on defectiveness should be excluded because it is solely based on two private standards and does not employ Arizona's legal tests for defectiveness. (Doc. 102 at 8–10). Plaintiff argues this misstates the standard to Defendant's benefit and invades the province of the judge and jury. (Doc. 102 at 10).

In the Motion, Plaintiff identifies the appropriate tests for proving a design defect under Arizona law: the risk/benefit analysis and the consumer expectation test. *Brethauer v. Gen. Motors Corp.*, 221 Ariz. 192, 198, 211 P.3d 1176, 1182 (Ct. App. 2009). Plaintiff then argues that Marzola's conclusion in the report—that the batteries are not defective because they satisfy UL and IEC standards—should be excluded because it fails to reference or conduct any of the analysis under either Arizona test. (Doc. 102 at 9–10).

This Court rejects this argument because Plaintiff provides no legal authority—in either of its briefings—that stands for the proposition that an expert testifying as to design

defect must structure his conclusion in accordance with the state's legal tests for design defect. The risk-benefit and consumer expectation tests lay out what the fact-finder must find for a manufacturer to be held strictly liable for injuries caused by a defective and unreasonably dangerous product. *Brethauer*, 221 Ariz. at 198, 211 P.3d at 1182. This Court is unaware of any legal authority holding that the risk-benefit and consumer expectation tests further dictate what an expert can and cannot testify to in a design defect case.

To determine the admissibility of expert testimony, the relevant guideposts are FRE 702 and the factors of reliability as provided by *Daubert*. Fed. R. Evid. 702; *Daubert*, 509 U.S. at 579. Plaintiff makes no meaningful argument that Marzola's opinion on defectiveness should be excluded for failure to meet the *Daubert* standard. The only mention of *Daubert* comes in the final sentence of this section of the Motion's argument. (Doc. 102 at 11). To the extent that any *Daubert* argument exists, this Court sees no obvious issues with the reliability or relevancy of Marzola's testimony. While his report may not address risks, benefits, or consumer expectations, it explains the UL and IEC standards and details the tests that the batteries undergo in order to comply with those standards. (Doc. 102-2 at 24–25). Such testimony could prove helpful to a jury applying the risk-benefit or consumer expectation tests. As such, Plaintiff has not given this Court any compelling reason to exclude Marzola's opinion on defectiveness.

**D. Marzola's Deposition Opinion on Battery Life and Vaping Frequency**

In his deposition, Marzola stated that Plaintiff "seems to be a pretty heavy vaper" and that from Marzola's experience "having a 13-month-old battery still performing as [Plaintiff] describes . . . is something that I can't grasp . . . I just don't have experience where a battery has lasted that long in this type of device." (Doc. 102-6 at 8). Plaintiff first argues this deposition opinion should be excluded because it was untimely disclosed. (Doc. 102 at 12–13). Second, Plaintiff argues for its exclusion because its primary purpose is to undermine the credibility of a fact witness. *Id.*

As to timeliness, the parties first dispute when Marzola's opinion on battery life and vaping frequency was disclosed to Plaintiff. Plaintiff asserts that disclosure did not occur

until Marzola's deposition on June 15, 2021. (Doc. 102 at 11). Defendant asserts that disclosure occurred prior to Marzola's deposition, in the form of FDA materials in the possession of Plaintiff and his experts. (Doc. 122 at 12–13). The materials related to a 2017 FDA hearing on the safety of batteries in the vaping context and to FDA regulatory actions in the vaping industry. *Id.* The hearing supposedly included discussion on the issue of battery life. *Id.* at 12.

Defendant argues that Plaintiff's possession of these materials proves Plaintiff was aware of the issue well before the deposition. *Id.* Specifically, Defendant notes that Plaintiff's rebuttal expert, James Miller, had materials and articles referring to the FDA's regulatory actions related to batteries in vaping products in his file and on his website. *Id.* Additionally, Defendant claims that materials related to FDA regulation of the vaping industry were presented to Plaintiff's causation expert Chet Sandberg during his deposition on March 21, 2021. *Id.* Finally, Defendant claims that FDA materials, including hearing transcripts, were provided directly to Plaintiff in advance of Miller's deposition, which was scheduled two weeks prior to Marzola's deposition. *Id.* at 12–13.

In the Reply, Plaintiff denies altogether that the FDA materials addressed the issue of battery life and vaping frequency and that Defendant offered no evidence to the contrary. (Doc. 123 at 6). Plaintiff thus argues that even if these FDA materials were in Plaintiff's possession prior to Marzola's deposition, this would not have constituted a disclosure of Marzola's opinion. *Id.* Indeed, the only evidence Defendant offers related to the contents of the FDA materials is a footnote citation to Miller's website, (*see* Doc. 122 at 12 n.6), and a comment by Marzola at his deposition. (Doc. 122 at 13). The website references FDA regulations, but makes no mention of the FDA hearing or the issue of battery life and vaping frequency. (Doc. 122 at 12 n.6). Marzola's deposition comment indicates that "[s]everal of the speakers" at the FDA hearing discussed "that they would be surprised in a vaping setting that a battery would last much more than six months and at the most maybe a year." (Doc. 122-2 at 8). Without stronger evidence that Marzola's specific opinion on battery life and vaping frequency was addressed at the FDA hearing and in the FDA

materials, this Court cannot find that Defendant disclosed the opinion prior to the deposition.[3] The Court will thus treat the disclosure as having occurred at Marzola's deposition.

The next issue to resolve is whether disclosure at Marzola's June 15 deposition was untimely. Federal Rule of Civil Procedure ("FRCP") 26 requires all testifying experts to provide a written report containing "a complete statement of all opinions the witness will express and the basis and reasons for them [and] the facts and data considered by the witness in forming them." Fed. R. Civ. Pro. 26(a)(2)(B)(i)–(ii). If an expert opinion is not included in the report but is later disclosed to the opposing party, FRCP 37 gives trial courts the discretion to exclude the untimely disclosed evidence. Fed. R. Civ. Pro. 37(c)(1).

Here, there is no dispute that Marzola's opinion on battery life and vaping frequency was not included in his July 2020 expert report. The question then is whether a disclosure of that opinion during Marzola's deposition nearly a year later is untimely. Plaintiff, of course, argues that it is and cites to two cases in support. Neither is helpful because both dealt with expert opinions that were disclosed for the first time during trial. *See S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 595 (4th Cir. 2003) (upholding district court's exclusion of expert's opinion that was disclosed for first time during trial); *Bearint ex rel. Bearint v. Dorell Juv. Grp.*, 389 F.3d 1339 (11th Cir. 2004) (upholding district court's exclusion of expert report that plaintiffs had waited until trial to submit). Here, Marzola's opinion on battery life and vaping frequency was disclosed during his deposition on June 15, 2021. (Doc. 102-6 at 8–10). Although discovery has concluded (Doc. 92), this Court has yet to rule on dispositive motions, let alone set a date for trial. Plaintiff's cases dealing with disclosures during trial are therefore inapposite to the present case.

Defendant argues that Marzola's opinion on battery life and vaping frequency is

---

[3] Even if the FDA materials did mention the battery life and vaping frequency issue, Rule 26(a)(4) requires that "all disclosures under Rule 26(a) must be in writing, signed, and served." Defendant does not contend that it disclosed Marzola's opinion in a signed writing that was served on Plaintiff.

intended "solely for impeachment" and therefore did not need to be disclosed at all. (Doc. 122 at 13). It is true that FRCP 26 does not require disclosure of evidence intended "solely for impeachment." Fed. R. Civ. Pro. 26(a)(1)(A)(i)–(ii), (a)(3)(A). However, only evidence that is *solely* for impeachment purposes is excluded from the disclosure requirement; if evidence has both impeachment and substantive purposes, it must be disclosed. *See, e.g.*, *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 517–18 (5th Cir. 1993); *Elion v. Jackson*, 544 F.Supp.2d 1, 6–7 (D.D.C. 2008). Whereas impeachment evidence is "[e]vidence used to undermine a witness's credibility," substantive evidence is that "offered to help establish a fact in issue, as opposed to evidence directed to impeach or to support a witness's credibility." *Black's Law Dictionary* (9th ed. 2009); *see also Newsome v. Penske Truck Leasing Corp.*, 437 F.Supp.2d 431, 435 (D. Md. 2006) ("Statements are useful as substantive evidence if they relate to a plaintiff's *prima facie* case or a defendant's affirmative defenses. Impeachment evidence is used to encourage the trier of fact to look critically at whether the evidence should be believed. In the ordinary case, impeachment evidence has no substantive purpose.").

Here, Marzola's opinion on battery life and vaping frequency has both impeachment and substantive purposes. As to impeachment, the opinion tends to undermine Plaintiff's credibility as to the batteries at issue—that is, it contradicts Plaintiff's testimony that the batteries in his pocket were the same batteries he purchased from Defendant. Substantively, Marzola's opinion helps to establish a fact in issue: whether the batteries involved in the incident were the same LG HG2 18650 batteries that Defendant sold to Plaintiff. Defendant's liability in this case depends on the jury's finding on this fact, especially given that the actual batteries from the incident are no longer available. Given the clear impeachment and substantive purposes for Marzola's opinion, disclosure of the opinion was required. And because the opinion was disclosed during Marzola's deposition, nearly a year after his expert report and after the close of discovery,[4] this Court finds that

---

[4] Although Plaintiff claims the opinion was disclosed "less than a week" before the close of discovery, (*see* Doc. 123 at 7), the record indicates that Marzola's June 15

14

disclosure was untimely.

Even where a party fails to make the disclosures required by FRCP 26(a), the evidence can nonetheless be admitted if the failure to disclose was substantially justified or harmless. Fed. R. Civ. Pro. 37(c)(1); *see also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). The burden is on the party facing exclusion—here, Defendant—to establish that the failure to disclose was substantially justified or harmless. *See Yeti*, 259 F.3d at 1107; *see also Reilly v. Wozniak*, No. CV-18-03775-PHX-MTL, 2020 WL 1151053, at *2 (D. Ariz. Mar. 10, 2020). "Among the factors that may properly guide a district court in determining whether a violation . . . is justified or harmless are: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Lanard Toys Ltd. v. Novelty, Inc.*, 375 Fed.Appx. 705, 713 (9th Cir. 2010) (citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)).

Here, Defendant does not attempt to justify the untimely disclosure but does argue that it was harmless. (Doc. 122 at 13). As to the factors, there is no evidence that Defendant acted in bad faith or willfully in failing to timely disclose. Additionally, given that a trial date has not even been set, the likelihood of trial disruption is low. Whether or not Defendant's untimely disclosure was harmless or not, then, depends on the first two factors: prejudice or surprise to Plaintiff and Plaintiff's ability to cure that prejudice. To the first, Defendant argues that Plaintiff has not been unfairly prejudiced by Marzola's opinion and that Plaintiff does not explain what he could have done differently had the opinion been in Marzola's report. *Id.* Second, Defendant then argues that Plaintiff still has plenty of time to explore the testimony because trial remains months away. *Id.* Specifically, Defendant states that Plaintiff "has ample opportunity to 'cure' any supposed surprise before trial." (Doc. 122 at 14).

---

deposition took place after both the deadlines to complete expert depositions and discovery. (*See* Doc. 92 (noting "[e]xpert depositions must be completed by March 19, 2021" and that "[d]iscovery shall be completed by April 2, 2021")).

15

To an extent, this Court agrees with Defendant. It is true that Plaintiff will have had time to overcome some of the prejudicial effects of the untimely disclosure before trial. For example, Plaintiff will have had ample time to modify his direct and cross examinations of the witnesses in this case, including Marzola. And caselaw indicates that a significant length of time between the disclosure and trial is sometimes enough for a finding of harmlessness. *See, e.g.*, *Los Flamboyanes Apartments, Ltd. Dividend P'ship v. Triple-S Propiedad, Inc.*, No. 18-1997(RAM), 2021 WL 1201411, at *6 (D.P.R. Mar. 30, 2021) (denying motion to exclude expert testimony first disclosed at deposition because defendant could "overcome any supposed adverse effects of . . . non-disclosure before trial," which was set a year after deposition); *Cabassa-Rivera v. Mitsubishi Motors Corp.*, No. 05-1217(JAF), 2006 WL 6870560, at *12 (D.P.R. 2006) (denying motion in limine to preclude an expert from testifying about matters in their deposition that were not in the expert's reports); *Thibeault v. Square D Co.*, 960 F.2d 239, 246–47 (1st Cir. 1992) ("While the introduction of expert testimony 'on the eve of trial' could warrant preclusion, the deposition surprises here were hardly the sort of 'eleventh-hour' changes that could be considered 'harmful.'").

However, Plaintiff has noted other ways in which he has been prejudiced, none of which can necessarily be cured before trial. For example, had the opinion been timely disclosed, Plaintiff claims that he would have "(1) addressed vaping volume directly with his client on the record at deposition; (2) prepared his expert to address the claim in his report and rebuttal report; (3) prepared his expert for the argument at deposition; (4) made a record on usage with Lindsey Niziolek at deposition; and (5) hired a rebuttal expert to address the opinion directly." (Doc. 123 at 7). Because Defendant disclosed Marzola's opinion on battery life and vaping frequency so late in the process—after the deadlines to depose experts and to complete discovery—Plaintiff cannot hire a rebuttal expert or meaningfully depose witnesses on the issue unless the Court reopens discovery, an expensive and time-intensive solution. Other courts have rejected claims of harmlessness under similar circumstances. *See, e.g.*, *SiteLock LLC v. GoDaddy.com LLC*, No. CV-19-

02746-PHX-DWL, 2021 WL 2895503, at *11 (D. Ariz. July 9, 2021) (citing *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, No. 11-CV-01846-LHK, 2012 WL 3155574, at *5 (N.D. Cal. Aug. 2, 2012), for proposition that "late disclosure [was] not harmless, even though it occurred 'before the close of expert discovery,' because 'the experts were in effect locked-in to the factual record as of the time fact discovery closed and could not test the factual basis for the newly amended contentions by conducting additional discovery").

Defendant has not met its burden in establishing that its untimely disclosure of Marzola's opinion on battery life and vaping frequency was justified or harmless. This Court finds that exclusion of Marzola's opinion is warranted under FRCP 37(c)(1) because Plaintiff was prejudiced by its untimely disclosure and because that prejudice cannot easily be cured by Plaintiff before trial.[5]

## IV.  CONCLUSION

Therefore,

**IT IS ORDERED** that Plaintiff Walsh's Motion to Exclude (Doc. 102) is **denied** as to the opinions and conclusions drawn in Marzola's report and **granted** as to Marzola's deposition statement related to battery life and vaping frequency.

Dated this 13th day of September, 2021.

Honorable Steven P. Logan
United States District Judge

---

[5] Since Marzola's deposition opinion is excluded for its untimely disclosure, the Court will not address Plaintiff's second argument that it should be excluded for undermining the credibility of a fact witness.