**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christopher Walsh,<br><br>  Plaintiff,<br><br>vs.<br><br>LG Chem America, et al.,<br><br>  Defendants. | No. CV-18-01545-PHX-SPL<br><br>**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court is Defendant's Motion for Summary Judgment on Plaintiff's Claims. (Doc. 106). Defendant seeks summary judgment in its favor on all four of Plaintiff's claims against it. (Doc. 106). The Motion has been fully briefed and is ready for review.[1] (Docs. 106, 116, 127). After reviewing the parties' briefing, the Court issues the following Order granting in part and denying in part Defendant's Motion.

**I.   BACKGROUND**

This is a products liability case involving two LG HG2 18650 batteries from a vaping device. (Doc. 30 at 2). Plaintiff Christopher Walsh ("Plaintiff") purchased the vaping device and batteries from Defendant retail smoke shop Oueis Gas, Inc. ("Defendant") on October 28, 2015. (*Id.*). On November 18, 2016, Plaintiff alleges those same batteries reacted with a set of keys in his right pocket and exploded, causing serious

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motion is suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

burns. (*Id.*). The incident occurred at a restaurant in Scottsdale, Arizona and surveillance video from the restaurant shows the explosion. (*Id.*). Plaintiff filed a complaint against LG Chem America, LG Chem Ltd., and Oueis Gas, Inc. on May 22, 2018 with four counts: (1) negligent design; (2) negligent failure to warn; (3) strict liability/design defect; and (4) strict liability/information defect. (*Id.* at 3–4). LG Chem America and LG Chem Ltd. were later dismissed, leaving Oueis Gas as the only remaining defendant. (Docs. 49 & 66).

Following the incident, Plaintiff negligently failed to preserve the batteries and keys as evidence. (Doc. 131 at 5). As a result, Defendant moved for an adverse instruction based on Plaintiff's spoliation of evidence, which this Court granted. (*Id.* at 6). This Court also granted Defendant's motion excluding the expert testimony of Plaintiff's expert Chester Sandberg. (Doc. 133). The testimony excluded concerned Sandberg's opinions on causation, design defect, and warnings defect. (*Id.*). Defendant now moves for summary judgment on all four of Plaintiff's claims. (Doc. 106).

## II.   LEGAL STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Material facts are those facts "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact arises if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party moving for summary judgment bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual

dispute and that the fact in contention is material. *Anderson*, 477 U.S. at 250. In other words, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," and, instead, must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

When considering a motion for summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must view the factual record and draw all reasonable inferences in the nonmovant's favor. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

### III. DISCUSSION

Plaintiff's Complaint contains four counts: (1) Negligent Design; (2) Negligent Failure to Warn; (3) Strict Liability/Design Defect; and (4) Strict Liability/Information Defect. The Court will first examine the design defects claims. The Court will then examine the claims for negligent failure to warn and for strict liability informational defect.

#### A. Negligent Design & Strict Liability/Design Defect (Counts I & III)

Plaintiff alleges design defect claims under both negligence and strict liability theories. As to the negligent design claim (Count I), Defendant argues that Plaintiff "cannot prevail . . . against [Defendant] for the simple reason that [Defendant], being a retailer (rather than product designer), does not design the batteries it sells." (Doc. 106 at 11). Indeed, in negligent design cases under Arizona law, "the plaintiff 'must prove that *the designer* acted unreasonably at the time of . . . design of the product.'" *Granillo v. Johnson & Johnson*, No. CV-19-00529-TUC-CKJ (MSA), 2020 WL 913300, at *2 (D. Ariz. Feb. 12, 2020) (emphasis added) (citing *Dart v. Wiebe Mfg., Inc.*, 147 Ariz. 242, 247 (1985)). Here, given that Defendant was never involved in the design of the batteries at issue, Defendant cannot be found liable for negligent design. In the Response, Plaintiff concedes and explains that the negligent design claim "was initially intended for another defendant"

who has since been dismissed from the case and that Plaintiff has no intention of proceeding with a negligent design claim against Defendant. (Doc. 116 at 10). This Court holds that Plaintiff's negligent design claim (Count I) is dismissed.

Turning to the strict liability design defect claim (Count III), this Court first notes that strict products liability "does not rest on traditional concepts of fault" and its plaintiffs do "not have to prove that the defendant was negligent." *St. Clair v. Nellcor Puritan Bennett LLC*, No. CV-10-1275-PHX-LOA, 2011 WL 5331674, at *4 (D. Ariz. Nov. 7, 2011) (citation omitted). The focus of a strict liability claim is on the quality of the product, not on the conduct of the defendant. *Id.* at *5 (citing *Golonka v. Gen. Motors Corp.*, 204 Ariz. 575, 581 (Ct. App. 2003)). Thus, unlike in negligence, a retailer may still be held liable for a design defect in strict liability, even if it did not design the product. *Id.*; *Rocky Mountain Fire & Cas. Co. v. Biddulph Oldsmobile*, 131 Ariz. 289, 292 (1982) (citing *Sullivan v. Green Mfg. Co.*, 118 Ariz. 181 (Ct. App. 1978)) ("[Strict liability] theory extends liability to manufacturers, . . . as well as the dealer or retail seller of the product.").

Under Arizona law, a prima facie case for strict products liability requires a plaintiff "to show the following: the product is defective and unreasonably dangerous; the defective condition existed at the time it left defendant's control; and the defective condition is the proximate cause of the plaintiff's injuries." *Id.* at *4 (citing *Dietz v. Waller*, 141 Ariz. 107, 110 (1984)). "There are three categories of defects in strict products liability actions: manufacturing defects; design defects; and informational defects in regard to instructions and warnings." *Sw. Pet Prods., Inc. v. Koch Indus., Inc.*, 273 F. Supp. 2d 1041, 1051 (D. Ariz. 2003) (citing *Piper v. Bear Med. Sys., Inc.*, 180 Ariz. 170, 173–74 (Ct. App. 1993)). As to design defects, "Arizona courts have adopted two alternate tests to establish the existence of an unreasonably dangerous design defect—the consumer expectations test and the risk/benefit test." *Philadelphia Indem. Ins. Co. v. BMW of N. Am. LLC*, No. CV-13-01228-PHX-JZB, 2015 WL 5693525, at *14 (D. Ariz. Sept. 29, 2015) (citing *Dart*, 147 Ariz. at 245). "Under the 'consumer expectation test,' the fact-finder determines whether the product 'failed to perform as safely as an ordinary consumer would expect when used

in an intended or reasonable manner.' If so, the product was in a defective condition and unreasonably dangerous." *Golonka*, 204 Ariz. at 581 (citing *Dart*, 147 Ariz. at 245). The consumer expectation test does not always apply, particularly when "the consumer would not know what to expect, because he would have no idea how safe the product could be made." *Dart*, 147 Ariz. at 244. In that case, Arizona courts may employ the risk/benefits test, which asks the factfinder to weigh a series of factors to determine whether the risks of danger inherent in the design outweigh the benefits of the design. *Id.* at 245.

Here, Defendant appears to argue that the consumer expectations test does not apply to this design defect claim. (Doc. 106 at 5). It is true that the consumer expectations test is often better suited for manufacturing defect claims than for design defect claims. This is because in manufacturing defect cases "consumers have developed safety expectations from using properly manufactured products of the same general design." *Golonka*, 204 Ariz. at 581. Conversely, in design defect cases, "the consumer expectation test has limited utility as 'the consumer would not know what to expect, because he would have no idea how safe the product could be made.'" *Id.* (citing *Dart*, 147 Ariz. at 244). However, just because a design defect claim is at issue does not automatically mean the consumer expectations test is disregarded. Nor is the test thrown out merely because the product is complex. Instead, "[t]he critical question is whether the '*circumstances of the product's failure* permit an inference that the product's design performed below the legitimate, commonly accepted minimum safety assumptions of its ordinary consumers.'" *St. Clair*, 2011 WL 5331674, at *6 (citing *McCabe v. Am. Honda Motor Co.*, 100 Cal. App. 4th 1111, 1122 (2002)). As the Arizona Court of Appeals explained:

> If the consumer expectation test was applicable only when a consumer could form an expectation as to the product's actual design, the test would almost never apply because the average consumer is typically not familiar with any product's intricate design details. On the other hand, consumers do form expectations as to how safely products they purchase will *perform*.

*Brethauer v. Gen. Motors Corp.*, 221 Ariz. 192, 199 (Ct. App. 2009). Here, the fact that a battery exploded in plaintiff's pocket permits an inference that the product's design performed below the safety assumptions of its ordinary consumers. Thus, this Court finds that both the consumer expectations test and the risk/benefits test may apply. *See Golonka*, 204 Ariz. at 582 (giving jury instructions encompassing both tests); *Martinez v. Terex Corp.*, 241 F.R.D. 631, 641 (D. Ariz. 2007) (holding that both tests applied in determining whether cement mixer was defective).

Setting aside the design defect tests, Defendant argues that Plaintiff is required—under *Rossell v. Volkswagon of Am.*, 147 Ariz. 160 (1985)—to use an expert to establish the elements of his claim because the issues in this case "are beyond the common understanding of jurors." (Doc. 106 at 4–5, 8). And because this Court excluded Plaintiff's only expert testimony—that of Chester Sandberg—Defendant argues that Plaintiff's claims must be dismissed. (*Id.* at 8). The Court is unpersuaded. First, *Rossell* stands only for the proposition that in negligence cases, expert evidence may sometimes be required in assisting the jury to determine what the "reasonable care" standard is. *See Rossell*, 147 Ariz. at 166–67. Here, the issue is whether expert evidence is required to prove the existence of a defect in a strict liability claim. The Court finds *Rossell* inapposite to the present case. Second, and more importantly, Defendant's argument ignores the consumer expectation test. The law is clear that "[n]o expert testimony is necessary to establish a design defect under the consumer expectation test because the test focuses on the safety expectations of an ordinary consumer rather than those of an expert." *Long v. TRW Vehicle Safety Sys., Inc.*, 796 F. Supp. 2d 1005, 1010 (D. Ariz. 2011) (internal quotations omitted) (citation omitted); *see also Martinez*, 241 F.R.D. at 641 ("[I]t is apparent that there is no requirement under Arizona law that expert testimony be given in a products liability action."). Therefore, this Court finds that Plaintiff's strict liability design defect claim is not dismissed for lack of expert testimony.

To survive summary judgment, though, Plaintiff must still show evidence sufficient to make out a prima facie case for strict liability design defect. Without expert testimony,

and without the incident batteries, Plaintiff has only circumstantial evidence to prove his case. This is not determinative, however, as Arizona courts have "allowed plaintiffs to rely on circumstantial evidence to establish a defect that existed at the time the product left the defendant's control caused the injuries." *Philadelphia Indem. Ins. Co.*, 2015 WL 5693525, at *15 (citing *Reader v. Gen. Motors Corp.*, 483 P.2d 1388, 1393–94 (Ariz. 1971)); *see also Dietz*, 141 Ariz. at 110 ("Plaintiffs, we have held, must be permitted to rely upon circumstantial evidence alone in strict liability cases, because it is unrealistic to expect them to otherwise be able to prove that a particular product was sold in a defective condition. . . . This would be especially true in cases . . . where the product has disintegrated or burned up."). Here, Plaintiff may rely on circumstantial evidence alone to establish his strict liability claim.

The question then is whether Plaintiff's circumstantial evidence is sufficient to survive summary judgment. *See Philadelphia Indem. Ins. Co.*, 2015 WL 5693525, at *16 (citing *Dietz*, 141 Ariz. at 110–11) ("To prevail on their claim, Plaintiffs must produce sufficient circumstantial evidence to permit 'an inference that the accident was caused by a defect.'"). If the circumstantial evidence permits an inference that the incident was caused by a defect, then "no specific defect need be shown." *Dietz*, 141 Ariz. at 110–11. Plaintiff is also not required "to eliminate with certainty all other possible causes" of the explosion in proving the batteries defective. *Id.* at 111. Instead, Plaintiff must "present evidence sufficient to allow the trier of facts to reasonably infer that it was more probable than not that the product was defective." *Id.*

In *Dietz*, the Arizona Supreme Court overturned the trial court's directed verdict—which had been in favor of the defendant—after finding that the plaintiff had presented sufficient circumstantial evidence at trial to submit his claim to the jury. *Id.* The case involved a boat which had been sold to the plaintiff by the defendant retailer. *Id.* at 109. Almost immediately after the purchase, the boat began experiencing problems, including electrical wiring issues, numerous leaks, and an engine problem. *Id.* Just two months after the purchase, and after the plaintiff had only operated it for ten hours, the boat fell apart

and sank while the plaintiff was operating it on a lake. *Id.* On appeal the Arizona Supreme Court found that, although there was no evidence of the defendant retailer causing a defect, "there was circumstantial evidence from which it could be inferred that the boat was defective at the time" of the plaintiff's purchase. *Id.* at 110.

The *Dietz* Court held that "[w]hile no single item of evidence is conclusive, there are several items that point to changes being made in the boat by [the defendant]." *Id.* Specifically, the Court noted that a "reasonable jury" could infer that the defendant retailer had modified the boat if the jury considered the stipulation that the boat was free of manufacturing defects "in conjunction with the existence of the leak, the installation of used seats, the engine's appearance of previous use, and the electrical and engine problems." *Id.* at 111. Moreover, the jury could find that a defect existed at the time of sale if it also considered that the boat had only been used by the plaintiff for ten hours "and was being properly operated by an experienced boatman on a clear, calm day." *Id.*

Here, Plaintiff has circumstantial evidence from which it could be inferred that the batteries were defective. A reasonable jury could find that Plaintiff purchased batteries from Defendant in October 2015, as shown by Plaintiff's bank statements and receipts. A reasonable jury could also find that Plaintiff used those batteries regularly and often carried them in his pocket over the course of the next year, as evidenced by the testimony of Plaintiff, his ex-girlfriend, and others. A jury could also view the restaurant surveillance video, see the explosion in Plaintiff's pocket, review Plaintiff's medical records documenting his injuries, and come to the reasonable conclusion that the batteries failed to perform as safely as an ordinary consumer would expect and were therefore defective.

Defendant argues that the above evidence—*e.g.,* the receipts, the surveillance video, the testimony—is not enough because "there must be some indication that a defect existed other than the occurrence of the underlying incident itself." (Doc. 106 at 10). Specifically, Defendant takes issue with the lack of evidence concerning the condition of the batteries before the explosion. (*Id.*). Defendant compares the evidence available here with that in *Dietz*. For example, the *Dietz* plaintiff had only owned the boat for two months and had

only operated it for ten hours at the time of the incident. *Dietz*, 141 Ariz. at 109. This evidence helped establish that the boat fell apart due to a defect rather than because of anything the plaintiff did. Here, in contrast, Plaintiff owned the batteries for over a year before the incident. This makes it difficult to narrow the cause of the explosion to a defect that existed at the time of Plaintiff's purchase. The Court does not overlook these evidentiary issues. Indeed, the circumstantial evidence available in this case may very well be weaker than that in *Dietz*. However, when viewed in the light most favorable to Plaintiff, the facts here create enough circumstantial evidence to support a prima facie case for strict liability design defect. *See Dietz*, 141 Ariz. at 111 (listing cases in which courts reached similar decisions "when there was no evidence as to the existence of a defect prior to sale"). Whether Plaintiff's evidence actually proves the existence of a design defect is for the jury to decide. This Court denies summary judgment to Defendant as to Plaintiff's strict liability design defect claim (Count III).

### B. Negligent Failure to Warn (Count II) and Strict Liability Information Defect (Count IV)

Plaintiff makes claims as to inadequate warnings under both negligence and strict liability theories. (Doc. 30 at 3–4). The Court looks first at Plaintiff's strict liability theory. "A prima facie case of strict liability for informational defect requires a plaintiff to show (1) that the defendant had a duty to warn, (2) that the missing warning made the product defective and unreasonably dangerous, (3) that the warnings were absent when the product left defendant's control, and (4) that the failure to warn caused plaintiff's injury." *Baca v. Johnson & Johnson*, No. CV-20-01036-PHX-DJH, 2020 WL 6450294, at *3 (D. Ariz. Nov. 2, 2020) (citing *Sw. Pet Prods., Inc.*, 273 F. Supp. 2d at 1060); *Martinez*, 241 F.R.D. at 643. The Court focuses its analysis on the fourth element, causation.

"The proximate cause of an injury is defined in Arizona as that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces an injury, and without which the injury would not have occurred." *Long*, 796 F. Supp. 2d at 1011 (internal quotations omitted) (citing *Shelburg v. City of Scottsdale Police Dep't*, No. CV-

9

09-1800-NVW, 2010 WL 3327690, at *9 (Dist. Ariz. Aug. 23, 2010)). Generally, whether the lack of warnings proximately caused the plaintiff's injuries is a question for the jury. *See Martinez*, 241 F.R.D. at 644 ("[I]t is a jury determination as to whether the lack of such warnings proximately caused [Plaintiff's] injuries and death."); *Piper*, 180 Ariz. at 174 ("[p]roximate causation . . . is generally a jury question."). "However, the jury is not entitled to make a decision absent a proper evidentiary foundation." *D'Agnese v. Novartis Pharms. Corp.*, 952 F. Supp. 2d 880, 890 (D. Ariz. 2013) (citing *Gebhardt v. Mentor Corp.*, 191 F.R.D. 180, 185 (D. Ariz. 1999)); *Sw. Pet Prods., Inc.*, 273 F. Supp. 2d at 1061 ("Although ordinarily the issue of proximate cause is a question of fact, summary judgment may be appropriate absent proper evidentiary foundation."). In other words, there must be some evidentiary foundation of proximate cause before the question may be turned over to the jury. *See Gosewisch v. Am. Honda Motor Co., Inc.*, 153 Ariz. 400, 404 (1987) ("Because of the absence of any testimony, the jury would have been forced to speculate whether the alleged informational defect was a proximate cause of [Plaintiff's] injury.").

To establish proximate cause in a failure-to-warn or inadequate warning case, a plaintiff must provide "evidence that had a proper warning been given, he would not have used the product in the manner which resulted in his injury, or by evidence that certain precautions would have been taken that would have avoided the accident." *Gosewisch*, 153 Ariz. at 403; *see also D'Agnese*, 952 F. Supp. 2d at 890; *Paseka v. Ethicon Incorporated*, No. CV-20-00100-PHX-SRB, 2020 WL 8175427, at *4 (D. Ariz. Nov. 9, 2020). "In Arizona, there is heeding presumption used in strict liability information defect cases that allows 'the fact-finder to presume that the person injured by product use would have heeded an adequate warning, if given.'" *D'Agnese*, 952 F. Supp. 2d at 890 (citing *Golonka*, 204 Ariz. at 586). "However, the heeding presumption is rebuttable and, if the manufacturer introduces evidence that would permit reasonable minds to conclude that the injured party would not have heeded an adequate warning, the presumption is destroyed as a matter of law and the existence or non-existence of the presumed fact must be determined as if the presumption had never operated in the case." *Id.* at 890–91 (citing *Golonka*, 204

Ariz. at 590–91). When the presumption is destroyed, the burden is placed back on the plaintiff "to produce evidence of proximate causation." *Paseka*, 2020 WL 8175427, at *4.

Here, the Court begins with the presumption that Plaintiff would have heeded an adequate warning if it had been given. Defendant rebuts this presumption with the deposition testimony of Plaintiff. (Doc. 106 at 11). Specifically, Plaintiff testified that he "sparingly" reads the instructions that come with products and that he did not read the instructions that came with the products at issue in this case. (Doc. 106-1 at 14–15, 36–37, 41–42). Plaintiff responded "no" when asked whether he typically noticed what was posted on the walls at the vaping store. (*Id.* at 37). He also responded "no" when asked whether he typically took any of the product or product safety literature lying around at the vaping store. (*Id.* at 37–38). When asked why he does not read such information, Plaintiff responded that it "[d]oesn't seem . . . relevant at the time." (*Id.* at 38). Given that Plaintiff rarely reads the instructions or warnings that come with products he purchases and that he specifically did not read the instructions or warnings in this case, a reasonable mind could infer that it would have made no difference if Defendant had provided a different or more adequate warning. This Court finds that Defendant has presented sufficient evidence to rebut the heeding presumption in this case.

With the presumption destroyed, the burden shifts to Plaintiff to present sufficient evidence of proximate causation—that is, to show that Plaintiff's injury would have been avoided had Defendant provided adequate warnings. First, Plaintiff points to his deposition testimony, specifically the portion in which he stated that he "sparingly" reads the instructions that come with products. (Doc. 117-1 at 5). Plaintiff argues this proves that Plaintiff "sometimes" reads instructions and warnings. (Doc. 116 at 9). Second, Plaintiff points to the following deposition exchange:

> Q: What do you think somebody could have told you that would have made a difference in what you did with carrying the LG batteries in your pocket with metal?
>
> A: I'm sure, like my friends, if they—if I would have known someone that had had an injury, I would have changed a lot of what I've done or what I had done up to that point. That day

> going forward, if I would have heard a friend had been hurt, I would have been the first in line to go in and find ways to change the way that I was doing that. But, you know, to—I thought that I was, you know—I thought everything was fine because everything was working the way it was supposed to work.

(Doc. 117-1 at 6). Plaintiff appears to argue that this answer is proof that a warning would have changed his behavior. (Doc. 116 at 9–10).

This Court is unpersuaded by Plaintiff's arguments. As discussed above, Plaintiff's admission that he only "sparingly" reads product instructions and warnings supports this Court's finding that Defendant rebutted the heeding presumption. Now Plaintiff cites to the very same deposition statement and argues that it is proof of just the opposite—that because Plaintiff "sometimes" reads product instructions and warnings, a more adequate warning by Defendant would have made a difference in this case. This argument amounts to little more than a play on the word "sparingly" and fails to establish any sort of evidentiary foundation for causation.

The second deposition excerpt—Plaintiff stating that he would have changed his ways had he known of a friend being similarly injured by the batteries—does nothing to establish that Defendant's allegedly inadequate warnings were the cause of Plaintiff's injuries. Sure, this deposition excerpt sheds light on what *type* of warning would have most likely changed Plaintiff's behavior—if he had read or otherwise received it. The issue of proximate cause, however, remains in the dark. Even if Defendant had provided a warning that explicitly laid out the danger of injury, there is still no evidence to show that Plaintiff would have read it. In fact, just weeks after Defendant's October 2015 purchase, Defendant *did* change the warnings provided on its receipts, adding language that described proper storage and transport practices and that warned battery purchasers that failure to follow those practices "may result in fire or explosion causing personal harm." (*Compare* Doc. 104-2 at 12 *with* Doc. 104-2 at 14). The record indicates that Defendant made at least 14 more purchases between then and the November 2016 incident, each time receiving a receipt that included the new warnings. (Doc. 104-2 at 14–43). There is no evidence that

Defendant ever read the warnings on these receipts. This only underlines the absence of proximate cause in Plaintiff's case; there is simply no evidence to suggest that Plaintiff "would have acted differently in the face of different warnings by [Defendant]." *McBroom v. Ethicon, Inc.*, No. CV-20-02127-PHX-DGC, 2021 WL 824411, at *4 (D. Ariz. Mar. 4, 2021). Therefore, there is no evidence that Defendant's warnings were the cause of Plaintiff's injuries. Because Plaintiff has failed to create a triable issue on causation, his claim for strict liability information defect must be dismissed. *See id.*

The dismissal of Plaintiff's strict liability claim means that his negligence claim—for negligent failure to warn—must be dismissed as well. "If [a plaintiff] cannot prove his case in strict liability, he cannot prove it in negligence either. This is true because if [the plaintiff] were to proceed on a negligence theory he would have to prove everything he would need to prove under a strict liability theory plus he would have to prove that the defendant knew or should have known that [the product] was unnecessarily dangerous. The count for negligence is therefore redundant." *Gomulka v. Yavapai Mach. & Auto Parts, Inc.*, 745 P.2d 986, 990 (Ariz. Ct. App. 1987); *see also Baca*, 2020 WL 6450294, at *3 (agreeing with defendants that, if a complaint fails to state a claim for strict liability, "it necessarily cannot state a claim in negligence").

As explained above, Plaintiff has failed to show a genuine dispute of material fact as to causation. Given that causation "is an essential element to negligence claims" as well, Plaintiff's negligent failure to warn claim must be dismissed for the same reason that his strict liability claim was dismissed. *Baca*, 2020 WL 6450294, at *4; *Tucson Industries, Inc. v. Schwartz*, 487 P.2d 12 (Ariz. Ct. App. 1971) ("In a failure to warn or inadequacy of warning case, as in all other negligence cases, plaintiff must trace his injury to some conduct or lack of conduct on the part of the defendant. . . . [L]egal 'causation' is established when the doing of an act or the adequacy of the performance would have prevented the injury or loss."); *see also McBroom*, 2021 WL 824411, at *5 (listing cases holding that plaintiffs must show that defect was proximate cause of injury under both negligence and strict liability theories). Plaintiff has failed to show evidence that

Defendant's alleged failure to warn caused Plaintiff's injury. Without a sufficient evidentiary basis on the issue of proximate cause, the claim cannot go to the jury and must be dismissed.

## IV.  CONCLUSION

For the reasons discussed above, this Court grants summary judgment to Defendant in part and denies summary judgment to Defendant in part.

Therefore,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 106). is **granted in part** as to Plaintiff's claims for Negligent Design Defect (Count I), Negligent Failure to Warn (Count II), and Strict Liability Information Defect (Count IV). These claims are dismissed.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. 106) is **denied in part** as to Plaintiff's claim for Strict Liability Design Defect (Count III).

Dated this 8th day of November, 2021.

Honorable Steven P. Logan
United States District Judge